Holly Roark, ISB No. 7143
**ROARK LAW OFFICES**
950 Bannock St. Ste. 1100
Boise, ID 83702
Telephone: (208) 536-3638
Facsimile: (310) 553-2601
Email: holly@roarklawboise.com

*Counsel for Debtor/Debtor-in-possession*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO – BOISE

| | |
|---|---|
| In Re:<br>RIEDESEL ENGINEERING, INC.,<br>FDBA SURVEYORS WEST<br><br>Debtor and Debtor in Possession. | Case No. 18-00288-JMM<br><br>Chapter 11 |

**CHAPTER 11 PLAN INTENDED TO PROVIDE ADEQUATE
INFORMATION UNDER §1125(f)(1) FOR SMALL BUSINESS CASE
UNDER CHAPTER 11**

**1.   INTRODUCTION**

This is the Chapter 11 Plan, which is also intended to provide adequate information under 11 U.S.C. §1125(f)(l) in the small business chapter 11 case of Riedesel Engineering, Inc. (the "Debtor"). It therefore contains information about the Debtor and describes the Debtor's proposed treatment of creditors. ***Your rights may be affected. You should read this Plan carefully and discuss it with your attorney.*** *If you do not have an attorney, you may wish to consult one.*

The proposed distributions under the Plan are discussed at pages 5-10 of this Plan. In general, the Debtor proposes to pay in full all priority and secured claims, with the general unsecured class receiving approximately 0.00% of its claims. You should read the Plan in full, along with its exhibits to determine what type of claim you have, and how it is to be treated.

Riedesel proposes an injunction in this plan, by which any creditors of Riedesel would be prohibited from attempting to enforce any personal guarantees of that debt, so long as Riedesel was performing its chapter 11 plan. That injunction is contained at p. 11.

**a)   Purpose of This Document**

This Document describes:

- The Debtor and significant events during the bankruptcy case,

- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),

- Who can vote on or object to the Plan,

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

- Why the Proponent believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

- The effect of confirmation of the Plan.

Be sure to read the Plan. This Plan will, if confirmed, establish your rights.

**b)    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed this Plan or determined finally that this Plan does provide adequate information under §1125(f)(l). This section describes the procedures pursuant to which this Plan will or will not be confirmed.

i.    ***Time and Place of the Hearing to Confirm the Plan:*** The hearing at which the Court will determine whether to approve the adequacy of disclosures made in this Plan, and confirm the Plan, will take place at the James A. McClure Federal Court House, 550 W. Fort Street, Boise, ID 83724, on dates to be set hereafter. Notice of both hearings shall be given in accordance with FRBP 3017. They may be combined into one hearing. FRBP 3017.1.

ii.   ***Deadline For Voting to Accept or Reject the Plan:*** If you are entitled to vote to accept or reject the plan, vote on the ballot which will be sent to you and return the ballot to Roark Law Offices, 950 Bannock St. Ste. 1100, Boise, Idaho 83702. See Section IV.A. below for a discussion of voting eligibility requirements. Your ballot must be received by the due date or it will not be counted.

iii.  ***Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan:*** Objections to the adequacy of disclosures made in this Plan, or to the confirmation of the Plan, must be filed with the Court and served upon counsel for Debtor and the United States Trustee by the dates shown in the notice you will receive from the Court.

iv.   ***Identity of Person to Contact/or More Information:*** For additional information about the Plan, please contact Holly Roark, Attorney for Debtor, at 950 Bannock St. Ste. 1100, Boise, ID 83702.

**c)    Disclaimer**

*The Court has not yet approved this Plan as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation. If the Court approves this Plan as containing adequate information, that does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted*

**CHAPTER 11 PLAN INTENDED TO PROVIDE ADEQUATE INFORMATION UNDER §1125(f)(1) FOR SMALL BUSINESS CASE UNDER CHAPTER 11**

2

*The Court's approval of this Plan as containing adequate information is subject to final approval at the hearing on confirmation of the Plan. Objections to the adequacy of this Plan as containing adequate information may be filed until that date set by the Court in the notice you will receive from the Court.*

### d)   Filing of the Case

Debtor, Riedesel Engineering, Inc., filed a petition herein under Chapter 11 of the Bankruptcy Code on March 15, 2018. Since that time, Debtor has managed its property consistent with the orders of the Bankruptcy Court and the requirements of Title 11 and the Bankruptcy Rules of Procedure.

## 2.   BACKGROUND

### a)   Description and History of the Debtor's Business

The Debtor is a civil engineering firm. In 2017, on the eve of merging with a larger firm, the employees of the Debtor's Lewiston office walked out, and nearby J-U-B Engineers, Inc. hired them. This caused great harm to the Debtor, caused the merger to be canceled, and caused the Debtor to have to file the Chapter 11 case. The Lewiston office had to be closed down. The Debtor has hired civil litigation counsel to prosecute an action for damages against the former employees and J-U-B Engineers, Inc. The Debtor currently maintains a Twin Falls office and a Meridian office, and presently has ten employees.

As more fully described herein, pursuant to the Plan, upon confirmation, Debtor will sell its hard assets and assign its contracts to president, Martin G. Gergen, who will then sell and assign the assets and contracts to THOMAS, DEAN & HOSKINS, INC., a Montana Corporation ("TD&H"), with principal offices at 1800 River Drive North, Great Falls, Montana 59401, for $12,000, plus 5% of the contract values (approximately $40,000 to $50,000). These funds will be turned over to Riedesel for distribution to creditors. Mr. Gergen will sign an employment contract with TD&H as part of the deal. Thereafter, Riedesel will continue collect all outstanding accounts receivables and work in progress. To the extent that the administrative, priority, and secured claim of First Federal Savings Bank are not paid in full, Mr. Gergen will donate a portion of his yearly production bonuses while working for TD&H to Riedesel to supplement the Plan to be disbursed to the above-referenced creditors. All proceeds from the litigation with J-U-B Engineers, Inc., after costs and attorneys' fees are paid, will be turned over to Riedesel for distribution to creditors. TD&H is an engineering firm with over 100 employees, and Mr. Gergen believes he may be able receive the maximum production bonuses annually totaling $400,000 over a three-year period beginning January 2020.

### b)   Insiders of the Debtor

The "insiders" of the Debtor, as defined in§ 101(31) of the United States Bankruptcy Code (the "Code") are Tim Bretz (CEO), Martin G. Gergen (President), and Rex Harding (.5% shareholder).

Several former employees hold promissory notes, secured by stock in the company, which is effectively valued at zero due to the bankruptcy, and their claims are rendered unsecured. Those former employees are: Andrew Kimmel; Charles Vance; Donald Acheson; Ed R. Spears; Freddie Garcia; George E. Mustard; M. Kent Atkin; Matthew C. Brander; Tracey S. McAuley: Valerie Smith: Aaron L. Wert; and Marvin Kerbs.

**CHAPTER 11 PLAN INTENDED TO PROVIDE ADEQUATE
INFORMATION UNDER §1125(f)(1) FOR SMALL BUSINESS CASE
UNDER CHAPTER 11**

### c)  Significant Events During the Bankruptcy Case

Riedesel sought and obtained the approval of employment of professionals Holly Roark, as general bankruptcy counsel, and Racine Olson Nye & Budge, Chartered ("Racine") to prosecute the litigation against the former employees and J-U-B Engineers, Inc.

Racine filed its action as case number CV-35-18-0781, in the Second Judicial District of Idaho in the County of Nez Perce, on or about April 23, 2018. Trial is currently set for August 2019, and may settle prior to that time, or may be decided upon summary judgment. The value of that case is uncertain but is likely $500,000 to $750,000.

Riedesel obtained approvals to use cash collateral by consent of First Federal Savings Bank ("FFSB") for a time, then after hearings held on March 20, 2018, for interim use of cash collateral, and on April 18, 2018, for final use of cash collateral through confirmation. The Debtor fell behind in its postpetition adequate protection payments to FFSB because clients have been refusing to pay their invoices since the bankruptcy was filed, and collection efforts have been unproductive. *See*, example, docket no. 99 Motion for Approval of a Compromise of a claim of $18,419.50 for $10,640.

No adversary proceedings have been filed. Prepetition, the Debtor was sued as a third party defendant in *Valley Paving & Asphalt, Inc. v. Idaho County*, Case No. CV-17-549 in the Second District of Idaho, County of Idaho. The Plaintiff in that case has not sought relief from stay to proceed against the Debtor. The Debtor believes that it will have no liability in that matter and was told that it was added as a third party defendant simply as a necessary party.

Claims have been reviewed, and there may be contested claim disallowance proceedings hereafter. There are no other significant legal or administrative proceedings that are pending or have been pending during the case in a forum other than the Court, except as referenced above.

### d)  Projected Recovery of Avoidable Transfers

Riedesel does not intend to pursue preference, fraudulent conveyance, or other avoidance actions, as it does not appear any are warranted.

### e)  Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

A disputed claim is a claim that has not been allowed or disallowed and as to which either (i) a proof of claim has been filed or deemed filed and the debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed and the Debtor has scheduled such claim as disputed, contingent or unliquidated. No distribution will be made on account of a disputed claim, to the extent that it is disputed, unless such claim is allowed. Riedesel reserves the right to settle and compromise any disputed claim with court approval and compliance with Rule 9019, Federal Rules of Bankruptcy Procedure.

### f)  Current and Historical Financial Conditions

To demonstrate its Current and Historical Financial Conditions, Riedesel attaches:

**CHAPTER 11 PLAN INTENDED TO PROVIDE ADEQUATE
INFORMATION UNDER §1125(f)(1) FOR SMALL BUSINESS CASE
UNDER CHAPTER 11**

4

as Exhibit A, a list of estate's assets and their values, and Liquidation Analysis showing that in a hypothetical chapter 7 on the date of filing, unsecured creditors would receive approximately 0% of their claims; In the plan they are estimated to receive 0% of their claims;

as Exhibit B, profit and loss statements for January 2015 – March 15, 2018, and March 15, 2018 through July 31, 2018

as Exhibit C, an Analysis of Martin G. Gergen's Bonus Payments Based upon Performance, which shows the distributions to FFSB, the IRS, the ISTC, Washington Department of Revenue, Idaho Department of Labor, Tim Bretz, Martin G. Gergen, Subcontractors (list of), and Unsecured Creditors.

Also on Exhibit C are projections of the proceeds from the litigation with the Debtor's former employees and J-U-B Engineers, Inc., estimated to be between $500,000 and $750,000.

### 3. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

#### a) What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

#### b) Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. The Plan Proponent has not placed the following claims in any class:

#### i. Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and his proposed treatment under the Plan and include attorneys' fees or Roark Law Offices and the Racine Olson firm; postpetition administrative priority claims for wages as described by § 503(b)(1)(a)(i), owed to Tim G. Bretz and Martin G. Gergen earned postpetition but for which they did not take a salary; payments owed to postpetition subcontractors; and delinquent postpetition adequate protection payments to secured lender FFSB.

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising In the Ordinary Course of Business | None | Paid in full on the effective date of the Plan, or according |

**CHAPTER 11 PLAN INTENDED TO PROVIDE ADEQUATE INFORMATION UNDER §1125(f)(1) FOR SMALL BUSINESS CASE UNDER CHAPTER 11**

| After the Petition is Filed | | to terms of obligation if later |
|---|---|---|
| Professional Fees As approved by the Court | Approximately $2,147.28 in costs and $10,352.72 in fees to Roark Law Offices, for which approval will be sought by the Court and are unpaid, for compensation to counsel, as of August 23, 2018, to be paid from funds held in trust ($7,500), and from the Debtor ($5,000). | Paid in full from funds held in Trust since prepetition and from Debtor. |
| | Approximately $28,506.83 in fees and costs to the Racine Olson firm. Approved postpetition retainer paid to date in the sum of $22,500. Approx. $8,713.83 in fees and costs owed for which funds are not on hand for which approval will be sought by the Court and are unpaid, for compensation to counsel, as of July 31, 2018, to be paid from funds held in trust and via Plan. | Paid in full from funds held in Trust approved as a postpetition retainer by the Court, and from Debtor. |
| Clerk's Office Fees | None as of August 23, 2018 | Paid in full on the effective date of the Plan |
| Office of the U.S. Trustee's Fees | None as of August 23, 2018 | Paid in full on the effective date of the Plan |
| **Administrative Claims under 503(b)(1)(A)** | | |
| Tim G. Bretz, Postpetition wage & expenses claim Through 9/18/18 | $45,140.60 | Paid as funds are available from asset sale, assignment of contracts to TD&H, and from remaining A/R and WIP, between confirmation and November 2019. |
| Martin G. Gergen, Postpetition wage claim Through 9/18/18 | $24,322.52 | Paid as funds are available from asset sale, assignment of contracts to TD&H, and from remaining A/R and WIP, between confirmation and November 2019. |
| First Federal Savings Bank, postpetition adequate protection payments | $12,000.00 | Paid as funds are available from asset sale, assignment of contracts to TD&H, and from remaining A/R and WIP, between confirmation and November 2019. |
| Terracon  (subcontractor) Project: Evergreen HD | $2,778.67 | Paid as funds are available from asset sale, assignment of |

**CHAPTER 11 PLAN INTENDED TO PROVIDE ADEQUATE INFORMATION UNDER §1125(f)(1) FOR SMALL BUSINESS CASE UNDER CHAPTER 11**

|  |  |  |
|---|---|---|
|  |  | contracts to TD&H, and from remaining A/R and WIP, between confirmation and November 2019. |
| Sappington (subcontractor) Project: Evergreen HD | $5,177.76 | Paid as funds are available from asset sale, assignment of contracts to TD&H, and from remaining A/R and WIP, between confirmation and November 2019. |
| HMH (subcontractor) Project: Tiger Drive | $1,390.77 | Paid as funds are available from asset sale, assignment of contracts to TD&H, and from remaining A/R and WIP, between confirmation and November 2019. |
| HMH (subcontractor) Project: Tiger Drive | $2,016.12 | Paid as funds are available from asset sale, assignment of contracts to TD&H, and from remaining A/R and WIP, between confirmation and November 2019. |
| WHPacific (subcontractor) Project: Tiger Drive | $3,739.92 | Paid as funds are available from asset sale, assignment of contracts to TD&H, and from remaining A/R and WIP, between confirmation and November 2019. |
| WHPacific (subcontractor) Project: Tiger Drive | $1,369.62 | Paid as funds are available from asset sale, assignment of contracts to TD&H, and from remaining A/R and WIP, between confirmation and November 2019. |
| HECO (subcontractor) Project: Greco | $3,229.50 | Paid as funds are available from asset sale, assignment of contracts to TD&H, and from remaining A/R and WIP, between confirmation and November 2019. |

### ii) Priority Tax Claims

Priority tax claims include unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a§ 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

**CHAPTER 11 PLAN INTENDED TO PROVIDE ADEQUATE
INFORMATION UNDER §1125(f)(1) FOR SMALL BUSINESS CASE
UNDER CHAPTER 11**

| Type | Estimated Amount Owed | Plan Treatment |
|---|---|---|
| Internal Revenue Service – Income taxes | $233,481.75 | Payment Term – Estimated to be paid in full by no later than December 31, 2019, depending on lawsuit resolution; lump sum payment from lawsuit and possibly from production bonus. Debtor may take full statutory period to pay. |
| Idaho State Tax Commission | $27,620.30 | Payment Term – Estimated to be paid in full by no later than December 31, 2019, depending on lawsuit resolution; lump sum payment from lawsuit and possibly from production bonus. Debtor may take full statutory period to pay. |
| Idaho Department of Labor | $1,339.39 | Payment Term – Estimated to be paid in full by no later than December 31, 2019, depending on lawsuit resolution; lump sum payment from lawsuit and possibly from production bonus. Debtor may take full statutory period to pay. |
| WA Department of Revenue | $1,033.63 | Payment Term – Estimated to be paid in full by no later than December 31, 2019, depending on lawsuit resolution; lump sum payment from lawsuit and possibly from production bonus. Debtor may take full statutory period to pay. |

If the debtor or the successor in interest fails to make any deposits of any currently accruing employment tax liability or fails to make payment of any tax to the Internal Revenue Service within 30 days of the due date of such deposit or payment, or if the debtor or the successor in interest fails to file any required federal tax return within 30 days of the due date of such return, then the United States may declare that the debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or debtor is in default.

If the United States declares the debtor or the successor in interest to be in default of the debtor's obligations under the Plan, then the entire pre-petition liability shall become due and payable immediately upon written demand to the debtor or the successor in interest.

If full payment is not made within 14 days of such demand, or other arrangement agreed in writing, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The debtors and all the debtor's property shall be liable for such unpaid liabilities as if no bankruptcy had occurred.

c) **Classes of Claims and Equity Interests**

**CHAPTER 11 PLAN INTENDED TO PROVIDE ADEQUATE INFORMATION UNDER §1125(f)(1) FOR SMALL BUSINESS CASE UNDER CHAPTER 11**

8

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

**Class I: Other Priority Claims**

Other priority claims are priority claims for prepetition wages and reimbursements that have not been paid to claimants pursuant to 507(a)(4) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

| Type | Estimated Amount Owed | Plan Treatment |
|---|---|---|
| Tim G. Bretz, Prepetition wage & expenses claim | $5,000.00 | Paid as funds are available from asset sale, assignment of contracts to TD&H, and from remaining A/R and WIP, between confirmation and November 2019. |

## CLASSES OF SECURED CLAIMS

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

Debtor identifies below all classes containing Debtor's secured pre-petition claims and their proposed treatment under the Plan:

**Class: II Secured Creditor: First Federal Savings Bank: Insider status: Not an Insider**

Collateral position: most business assets pursuant to a UCC-1 filing, including all cash, receivables, general intangibles, equipment
Allowed Secured Amount= $484,605.72
Priority of lien: first
Principal owed =$484,605.72 (Claim Nos. 8, 9 11, 12, and 13 [10 was paid off when the vehicle was sold) Prepet. Arrearage = loans have come due
Interest rate: 7%
Total Claim: $516,303.97through December 2019.
Impaired:  Yes
**Terms of Treatment:** Amortize Allowed Secured Claim of $484,605.72 or such other amount as the Court allows, less any adequate protection payments of $3,000 per month since April 1, 2018, with interest at 7.0%.

Delinquent postpetition adequate protection payments in the approximate sum of $12,000 shall be paid from any sums remaining from the TD&H asset purchase and assignment of contracts, plus the collection of A/R and WIP. The payments shall be made between the effective date and November 2019, as funds become available.

**CHAPTER 11 PLAN INTENDED TO PROVIDE ADEQUATE
INFORMATION UNDER §1125(f)(1) FOR SMALL BUSINESS CASE
UNDER CHAPTER 11**

By December 31, 2019, Debtor shall pay the remaining balance owed in full from the proceeds of the lawsuit against the former employees and J-U-B Engineers, Inc. and may include cash payments from the production bonus of Martin G. Gergen, if required, in order to pay the claim in full. In the event that the lawsuit does not generate enough funds to pay this class in full by December 31, 2019, the payment term will be extended to up to January 2022, at 7% interest. See Exhibit C-1.
See Ex. F for a Projection of the Production Bonus Payment.

## CLASSES OF UNSECURED CLAIMS

General unsecured claims are not secured by property of the estate and are not entitled to priority under§ 507(a) of the Code. Debtor identifies below all classes containing Debtor's unsecured prepetition claims and their proposed treatment under the Plan:

### Class III: Unsecured Claims. This Class is Impaired.

Total unsecured claims are believed to be $1,652,796.89. This includes the non-priority portion of the IRS' claim in the amount of $70,554.12; the ISTC's claim in the amount of $4,951.23; and the WA Department of Revenue's claim in the amount of $580.00.

The unsecured class is not expected to receive a dividend unless there are such funds sufficient to pay the claim of Martin G. Gergen in full on his promissory note claims of $321,888.66, and $11,132.00. Mr. Gergen shall be entitled to have his claims paid as a priority above the general unsecured claims if he donates any personal funds into the Plan as set forth below in "Source of Payments." Such funds may be characterized as "new value" under the Code. Mr. Gergen is an insider.

### Class IV: Equity Interests

The equity interests in Riedesel is held by Rex Harding, at .5%. Mr. Harding will not retain his equity interests in Riedesel, if this Plan is confirmed.

d) Means of Implementing the Plan

    i)      Source of Payments

Payments and distributions under the Plan will be funded by the following:

Upon confirmation of the Plan, Riedesel will sell all assets and assign all contracts to Martin G. Gergen for the same dollar amount TD&H pays for said assets and contracts. This includes all office equipment, and all contracts assumed herein.

Thereafter, pursuant to a written agreement, attached hereto as Exhibit H, TD&H will pay $12,000 to Martin G. Gergen to purchase the assets of Riedesel;

Mr. Gergen will assign the $12,000 funds to Riedesel;

Pursuant to the associated employment contract (Exhibit H), TD&H will pay approximately $43,000 to Martin G. Gergen for the assignment of all Riedesel contracts to TD&H, which funds Mr. Gergen will assign to Riedesel;

All Riedesel accounts receivable and work in progress that is collectible as of the date of confirmation;

All proceeds from the lawsuit filed by Riedesel against its former employees and J-

U-B Engineers, Inc., estimated to be between $500,000 and $750,000, will be used for distribution to creditors, after attorneys' fees and costs; and

Mr. Gergen will be employed by TD&H and is expected to receive production bonuses beginning in January 2020. See Exhibit F for details of bonus structure. A personal cash contribution from President, Martin G. Gergen, up to a **maximum** of $400,000 earned over a three year period with his employment at TD&H after the confirmation of the Plan, will be paid to Riedesel for distribution to creditors, but ONLY IF, the proceeds of the lawsuit, AR/WIP, sale of assets, are not enough to pay in full the administrative claims, priority claims, and the secured claims of FFSB. Mr. Gergen does not otherwise promise any payment into the Plan. The purpose of his contribution, if any, is to make sure all administrative claims, priority taxes, and claims of FFSB are paid in full. This is contingent upon his employment with TD&H. Mr. Gergen's liability shall extend only to the sums received by TD&H for the purchase of assets and assignment of contracts, and subsequent cash payments derived from his bonus income at TD&H under the conditions and contingencies set forth above.

Disclaimer: by signing the Plan personally, Mr. Gergen is not waiving his legal rights under the Bankruptcy Code. Any pay raises or additional bonuses paid to Mr. Gergen by TD&H which are not expressly delineated in the Plan to be contributed to the Plan are not subject to the Plan.

## ii)    Post-Confirmation Management

Riedesel shall continue its corporate entity so long as it is in litigation. It will continue to be managed by Martin G. Gergen, president, who will also be the **disbursing agent** under this Plan. However, such management shall be limited to collecting the outstanding receivables and work in progress, and participating in the ongoing litigation. Mr. Gergen will receive a salary of $250.00 per month and will be reimbursed for actual expenses associated with the operation of the Debtor.

To the extent that Riedesel reports profits in the current year or future years, Riedesel will distribute to its owners sufficient funds to pay the increase in income taxes resulting specifically from any distribution resulting from Riedesel's Kl.

\*\*\*\*\*

**Injunction:** Pursuant to 11 U.S.C. §105(a), entry of an order confirming this Chapter 11 Plan shall enjoin all Riedesel Creditors who may believe that the Debtor's principals are liable for any part of Riedesel's debt from prosecuting any claim against the Debtor's principals so long as Riedesel is in compliance with the terms of this Plan. A party seeking to institute proceedings against the Debtor's principals must obtain this Court's order terminating this injunction before doing so.

### e)  Risk Factors

The risk factors that Debtor faces are:

The risk to the creditors is that the litigation against the former employees and J-U-B Engineers, Inc. will be protracted and will not produce the expected proceeds, and that Mr. Gergen will not be awarded his expected production bonuses. This funding is not wholly speculative, but it is contingent upon prevailing in the lawsuit or obtaining a reasonable settlement, and also performing such that production bonuses are at a maximum if such

**CHAPTER 11 PLAN INTENDED TO PROVIDE ADEQUATE
INFORMATION UNDER §1125(f)(1) FOR SMALL BUSINESS CASE
UNDER CHAPTER 11**

contribution becomes required.

Other than collecting the outstanding A/R and WIP after the confirmation of the Plan, the Debtor will not engage in any further business, as Mr. Gergen will be working for TD&H pursuant to contract, and TD&H will have purchased the assets of the Debtor, as well as the open contracts.

**f)  Executory Contracts and Unexpired Leases**

Debtor assumes the executory contracts and lease agreements identified on Amended Schedule G, attached hereto as Exhibit E. Debtor also assumes all contracts which are work in progress attached to amended schedule G for the purposes of assigning said contracts to Mr. Gergen, who will then assign them to TD&H to receive 5% of the value which will be paid toward the plan.

Debtor rejects all other contracts not expressly assumed.

Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the treatment of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract shall be 90 days after entry of an order confirming the Plan.** Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

**g)  Tax Consequences of Plan**:

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

The following are the anticipated tax consequences of the Plan:

(1) Tax consequences to the Debtor of the Plan:

None are anticipated, but Debtor has not consulted with tax counsel on this matter. Any tax liability incurred by the Debtor as a result of this Plan shall be paid by the Debtor.

(2) General tax consequences on creditors of any discharge, and the general tax consequences of receipt of Plan consideration after confirmation:

**CHAPTER 11 PLAN INTENDED TO PROVIDE ADEQUATE INFORMATION UNDER §1125(f)(1) FOR SMALL BUSINESS CASE UNDER CHAPTER 11**

Debtor has no information to predict tax consequences to creditors of confirmation of this Plan and payment of these proposed Plan payments.

Debtor's payments may be treated as ordinary income to the extent that the claim Riedesel pays is for goods or services sold, for which the vendor has not realized the sale as taxable income.

For creditors whose claims arose out of loans of money to Debtor, as opposed to the sales of goods or services, the Debtor's payments may be treated as repayment of debt by the recipient, with interest paid to be treated as ordinary income and repayment of principal being treated as a nontaxable event. Each creditor should consult with its own advisor concerning "write-offs" or tax deductibility of discharged indebtedness, and the proper accounting therefor.

## 4.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; **at least one impaired class of claims must accept the Plan, without counting votes of insiders**; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in§ 1129, and they are not the only requirements for confirmation.

### a)  Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

The Plan Proponent believes that all classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

### i) What Is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or  equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The deadline for filing a proof of claim in this case was July 19, 2018, with the exception of governmental entities and the deadline for those creditors to file claims is September 11, 2018.**

**CHAPTER 11 PLAN INTENDED TO PROVIDE ADEQUATE
INFORMATION UNDER §1125(f)(1) FOR SMALL BUSINESS CASE
UNDER CHAPTER 11**

13

### ii) What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### iii) Who is Not Entitled to Vote

The holders of the following five types of claims and equity interests are *not* entitled to vote:

1.  Holders of claims and equity interests that have been disallowed by an order of the Court;
2.  Holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;
3.  Holders of claims or equity interests in unimpaired classes;
4.  Holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and
5.  Holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosures made in this Plan.***

### iv) Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### b) Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless: (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

### i) Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half(½) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### ii) Treatment of Non-Accepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram

down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of§ 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### c) Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as part of Exhibit A.

### d) Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

i)   Ability to Initially Fund  Plan

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date unless creditors have agreed to different treatment. Projections showing the amount of cash projected to be on hand each month are included in the Cash Projections and payments, with Plan Summary of Payments attached to this disclosure statement as Exhibits B and C. All funds are generated as set forth above in section 3.d.

ii)   Ability to Make Future Plan Payments And Operate Without Further
     Reorganization

Riedesel must also show that it will have enough cash over the life of the Plan to make the required Plan payments. It has provided its Exhibits B and C, Cash Projections through January 2022, showing its cash projections.  Exhibit F shows that, assuming this Plan is confirmed in September 2018, Riedesel projects that it will have year end annual cash on hand to make payments to the creditors such that all administrative, priority, and secured claims will be paid in full, and all unsecured claims will receive 0.00% of their claims

Those projections show a payout from the lawsuit of approximately $600,000 net after attorneys' fees and costs, plus a contribution by Martin Gergen of approximately $143,944.51. These projected payments are reflected on Exhibits B and C. This is likely the best case scenario, and creditors should be aware that actual bonuses and litigation proceeds may be less.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

## 5.    EFFECT OF CONFIRMATION OF PLAN

### a)  Effective Date of Plan

The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, or the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

**CHAPTER 11 PLAN INTENDED TO PROVIDE ADEQUATE
INFORMATION UNDER §1125(f)(1) FOR SMALL BUSINESS CASE
UNDER CHAPTER 11**

**b) Discharge of Debtor**

<u>Discharge.</u> On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in§ 1141(d)(l)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A), or (iii) of a kind specified in§ 114l(d)(6)(B). After the effective date of the Plan, claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

**c) Modification of the Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the Plan may be modified after confirmation but before substantial consummation of the Plan, but may not modify the plan so that it does not meet the requirements of 11 U.S.C. §1122 and§1123.

**d) Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

Dated: 8/24/2018

ROARK LAW OFFICES

_Holly Roark_

Holly Roark
Attorney for Debtor in Possession

Dated: 8/24/2018

RIEDESEL ENGINEERING, INC.

_Martin G. Gergen_

Martin G. Gergen, President

Dated: 8/24/2018

_Martin G. Gergen_

Martin G. Gergen,
Individually

**CHAPTER 11 PLAN INTENDED TO PROVIDE ADEQUATE INFORMATION UNDER §1125(f)(1) FOR SMALL BUSINESS CASE UNDER CHAPTER 11**

EXHIBIT LIST

Exhibit A, a list of estate's assets and their values, and Liquidation Analysis;

Exhibit B, Cash projections through January 2023, and Plan Summary of Payments

Exhibit C, Projection of payments to Secured, Priority, and General Unsecured Claims through January 2022/2023

Exhibit D, a profit and loss statements for 2015, 2016, 2017, and March 15, 2018, through July 31, 2018

Exhibit E, Amended Schedule G, Executory Contracts and Unexpired Leases;

Exhibit F, an Analysis of Production Bonus Payments Based upon Performance;

Exhibit G, Asset Purchase Agreement with supporting documents;

Exhibit H, Ballot for Accepting or Rejecting Plan; and

Exhibit I, Order Conditionally Approving as Providing Adequate Information Debtor's Chapter 11 Plan Intended to Provide Adequate Information Under 11 USC §1125(f)(1), for Small Business Case Under Chapter 11, Fixing Time for Filing Acceptances or Rejections of the Plan, and Fixing the Time for Filing Objections to the Disclosure Statement and to the Confirmation of the Plan, Combined with Notice Thereof and of the Hearing on Final Approval of the Debtor's Chapter 11 Plan as Providing Adequate Information and the Hearing on Confirmation of the Plan

**CHAPTER 11 PLAN INTENDED TO PROVIDE ADEQUATE INFORMATION UNDER §1125(f)(1) FOR SMALL BUSINESS CASE UNDER CHAPTER 11**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 24, 2018, I filed the foregoing document electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

- Holly Roark on behalf of Debtor Riedesel Engineering, Inc: holly@roarklawboise.com, courtnotices@roarklawoffices.com
- David A. Coleman on behalf of First Federal Savings Bank: david@crctflaw.com
- US Trustee: ustp.region18.bs.ecf@usdoj.gov
- David Wayne Newman on behalf of U.S. Trustee US Trustee ustp.region18.bs.ecf@usdoj.gov
- James Justin May on behalf of Creditor Donald Acheson jmay@maybrowning.com,ccortens@maybrowning.com;ecf.bk.mbm@gmail.com; r65250@notify.bestcase.com
- Scott J Smith on behalf of Debtor Riedesel Engineering, Inc.sjs@racinelaw.net
- Tecla Elizabeth Druffel on behalf of Creditor Carmen Dunham tecla@lewistonbankruptcylawyer.com,janetelaine@cableone.net,tecla.markosky@gmail.com,tecla.druffel@gmail.com,frontdesk@lewistonbankruptcylawyer
- Louis Vaughn Spiker on behalf of Creditor Worst Fitzgerald & Stover, PLLC lvs@magicvalleylaw.com

**AND I FURTHER CERTIFY** that on August 24, 2018, I caused to be served the foregoing on the following non CM/ECF Registered Participants via postage prepaid, first class,
U.S. Mail:

And see attached matrix.

/s/Holly Roark

_____
        Holly Roark

# EXHIBIT A

| Plan Proponent's Estimated Liquidation Value of Assets | | | |
|---|---|---|---|
| **Assets** | **Value on date of filing** | | **Liens** |
| Petty Cash - Twin Falls | $39.54 | | -$484,605.72 |
| Petty Cash - Meridian | $175.00 | | -$484,605.72 |
| Checking Account - First Federal Savings Bank *8446 | -$22.17 | | -$484,605.72 |
| Flex Account - First Federal Savings Bank *5225 | -$42.13 | | -$484,605.72 |
| Checking Account - Umpqua Bank *0262 | $498.20 | | -$484,605.72 |
| Receivable Check on hand | $2,604.70 | | -$484,605.72 |
| Prepaid Expenses/E&O Ins | $96,963.11 | | -$484,605.72 |
| Account receivables | $96,524.26 | | -$484,605.72 |
| Account receivables | $25,165.36 | | -$484,605.72 |
| Work in progress | $106,247.70 | | -$484,605.72 |
| Work in progress | $47,026.73 | | -$484,605.72 |
| Office furniture and fixtures | $36,647.00 | | -$484,605.72 |
| Technical Equipment | $30,000.00 | | -$484,605.72 |
| Goodwill* reduced to zero since the value on the schedules was from a calculation based on a preinsolvent scenario | $0.00 | | -$484,605.72 |
| Copy Machines - subject to leases | $47,970.00 | **(leases)** | -$39,767.18 |
| Lawsuit v. former employees & JUB Engineering | *contingent/unknown, but sale of this claim would likely be significantly less that its value | $0.00 | |
| **Total Assets at Liquidation Value** | **$489,797.30** | | |
| **Less Priority Claims** | -$263,475.06 | | |
| **Less Secured Claims** | -$484,605.72 | | |
| **Less Equipment Leases** | -$39,767.18 | | |
| **Less Chapter 11 Administrative Expenses** | $0.00 | | |
| **Subtotal** | -$298,050.66 | | |
| **Less 8% cost of sale** | -$99,183.78 | | |
| **Balance for General Unsecured Creditors** | **-$397,234.44** | | |
| **Total Dollar Amount of General Unsecured Creditors** | $0.00 | | |
| **Percentage Distribution to General Unsecured Creditors in Chapter 7** | 0.0% | | |
| **Percentage Distribution to General Unsecured Creditors Under the Plan** | 0.0% | | |

# EXHIBIT A

# EXHIBIT B

**PLAN SUMMARY**

**NOTES**

Debtor reserves the right to pay the Tax Claims over the statutory period of five years from filing date if funds are not available from the lawsuit in 2019 to pay the taxes in full at that time.

**CASH INCOME**

| | Sep 2018 - Nov 2019 | 12/1/2019 - 1/31/2023 | TOTAL |
|---|---|---|---|
| Asset purchase | $12,000.00 | | |
| Assignable contracts | $43,000.00 | | |
| Receivables/WIP | $34,000.00 | | |
| Work in progress | $70,000.00 | | |
| Lawsuit v. Employees/JUB est. | | $600,000.00 | |
| Production Bonus | $0.00 | $143,944.51 | |
| **TOTAL** | **$147,000.00** | **$743,944.51** | **$890,944.51** |

*Lawsuit is estimated to recover $500,000 to $750,000 but is unknown

*Marty Gergen will donate production bonus only to the extent required to pay priority tax debt and FFSB

**PAYMENTS**
**Administrative Claims**

| | | | |
|---|---|---|---|
| Attorney, Holly Roark | -$5,000.00 | | |
| Attorney, Racine Olson | -$8,713.83 | | |
| Tim Bretz | -$45,140.60 | | |
| Martin G. Gergen | -$24,322.52 | | |
| Subcontractors | -$19,702.36 | | |
| FFSB (adequate protection) | -$12,000.00 | | |
| **SUBTOTAL** | -$114,879.31 | | |
| **Secured Claims:** | | | |
| Remainder to FFSB | -$27,120.69 | -$489,183.28 | **-$516,303.97** |
| **SUBTOTAL** | **-$142,000.00** | **$254,761.23** | **-$147,000.00** |
| **Priority Unsecured Claims** | | | |
| Internal Revenue Service | $0.00 | -$233,481.75 | **-$233,481.75** |

# EXHIBIT B

| | | |
|---|---:|---:|
| Idaho State Tax Commission | $0.00 | -$27,620.30 | **-$27,620.30** |
| WA Department of Revenue | $0.00 | -$1,033.62 | **-$1,033.62** |
| Idaho Department of Labor | $0.00 | -$1,339.39 | **-$1,339.39** |
| Tim Bretz | -$5,000.00 | $0.00 | **-$5,000.00** |
| **SUBTOTAL** | $0.00 | -$8,713.83 | **-$931,779.03** |
| **General Unsecured Claims** | $0.00 | $0.00 | **$0.00** |
| **NET** | **$0.00** | **$0.00** | **$0.00** |

EXHIBIT B

# EXHIBIT C

**Aministrative Claims:**

**Paid from sale and assignment of assets, WIP/AR, after confirmation, within 10 days of receipt of** funds.

| | | |
|---|---|---|
| Attorney, Holly Roark | $5,000.00 | Approx. |
| Attorney, Racine Olson | $8,713.83 | Approx. |
| Tim Bretz | $45,140.60 | |
| Martin G. Gergen | $24,322.52 | |
| FFSB (adequate protection) | $12,000.00 | |
| **Total** | **$95,176.95** | |

**Subcontractors - postpetition**

| | |
|---|---|
| Terracon | $2,778.67 |
| Sappington | $5,177.76 |
| HMH | $1,390.77 |
| HMH | $2,016.12 |
| WHPacific | $3,739.92 |
| WHPacific | $1,369.62 |
| HECO | $3,229.50 |
| **Total** | **$19,702.36** |

| | |
|---|---|
| Subtotal | $95,176.95 |
| Subtotal | $19,702.36 |
| **Total** | **$114,879.31** |

EXHIBIT C-1

**PRIORITY UNSECURED CLAIMS**

*The Plan may be extended for the statutory period in order to pay the priority tax claims in full within 5 years of the filing date.

| Claim No. | Creditor | Amount | Priority | Percentage* | Payments | | | | TOTAL | Unsecured Portion | Percentage* | Payments | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Jan-20 | Jan-21 | Jan-22 | Jan-23 | | | | Dec-19 | |
| | **Filed Claims** | | | | | | | | | | | | |
| 2 | Internal Revenue Service | $304,035.87 | $233,481.75 | 100% | $233,481.75 | $0.00 | $0.00 | $0.00 | $233,481.75 | $70,554.12 | 0.0% | $0.00 | $0.00 |
| 23 | Idaho State Tax Commission | $32,571.53 | $27,620.30 | 100% | $27,620.30 | $0.00 | $0.00 | $0.00 | $27,620.30 | $4,951.23 | 0.0% | $0.00 | $0.00 |
| 7 | WA Department of Revenue | $1,613.62 | $1,033.62 | 100% | $1,033.62 | $0.00 | $0.00 | $0.00 | $1,033.62 | $580.00 | 0.0% | $0.00 | $0.00 |
| 20 | Idaho Department of Labor | $1,339.39 | $1,339.39 | 100% | $1,339.39 | $0.00 | $0.00 | $0.00 | $1,339.39 | $0.00 | 0.0% | $0.00 | $0.00 |
| | **TOTALS** | **$339,560.41** | **$263,475.06** | | **$263,475.06** | **$0.00** | **$0.00** | **$0.00** | **$263,475.06** | **$76,085.35** | 0.0% | $0.00 | $0.00 |

**ALTERNATIVE PAYMENT STRUCTURE**

| Claim No. | Creditor | Amount | Priority | Percentage* | Payments | | | | TOTAL | Unsecured Portion | Percentage* | Payments | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Dec-19 | Jan-21 | Jan-22 | Jan-23 | | | | Dec-19 | |
| | **Filed Claims** | | | | | | | | | | | | |
| 2 | Internal Revenue Service | $304,035.87 | $233,481.75 | 100% | $58,370.44 | $58,370.44 | $58,370.44 | $58,370.43 | $233,481.75 | $70,554.12 | 0.0% | $0.00 | $0.00 |
| 23 | Idaho State Tax Commission | $32,571.53 | $27,620.30 | 100% | $6,905.07 | $6,905.07 | $6,905.08 | $6,905.08 | $27,620.30 | $4,951.23 | 0.0% | $0.00 | $0.00 |
| 7 | WA Department of Revenue | $1,613.62 | $1,033.62 | 100% | $258.40 | $258.40 | $258.41 | $258.41 | $1,033.62 | $580.00 | 0.0% | $0.00 | $0.00 |
| 20 | Idaho Department of Labor | $1,339.39 | $1,339.39 | 100% | $334.84 | $334.85 | $334.85 | $334.85 | $1,339.39 | $0.00 | 0.0% | $0.00 | $0.00 |
| | **TOTALS** | **$339,560.41** | **$263,475.06** | | **$65,868.75** | | | | **$263,475.06** | **$76,085.35** | 0.0% | $0.00 | $0.00 |

| | Scheduled, Not Filed | Amount | Priority | Percentage* | Payments | TOTAL |
|---|---|---|---|---|---|---|
| | Prepetition Wages & reimbursement | | | | By end of 2018 | |
| | Tim G. Bretz | $5,000.00 | $5,000.00 | 100% | $5,000.00 | $5,000.00 |

# EXHIBIT C-2

| SECURED CLAIMS | | To be paid in full at 7% interest | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Payments are approximated** | | | | | | | | |

| Claim No. | Creditor | Amount | Percentage | Sep 2018 - Nov 2019 | 12/2019- 1/1/2020 | Jan-21 | Jan-22 | Notes |
|---|---|---|---|---|---|---|---|---|
| | **Filed Claims** | | | | | | | |
| | | | | | | | | PAYMENTS TO BE APPLIED TO OLDEST LOAN FIRST, PER FFSB |
| | | | | $27,120.69 | | | | |
| 8 | First Federal Savings Bank | $1,579.22 | 7% | | $1,682.52 | | | |
| 9 | First Federal Savings Bank | $4,892.05 | 7% | | $5,212.04 | | | |
| 10 | First Federal Savings Bank | $11,765.67 | | | $0.00 | | | |
| | paid - vehicle sold | -$11,765.67 | | | $0.00 | | | PAID |
| 11 | First Federal Savings Bank | $217,083.40 | 7% | | $231,282.93 | | | |
| 12 | First Federal Savings Bank | $153,628.04 | 7% | | $163,676.90 | | | |
| 13 | First Federal Savings Bank | $107,423.01 | 7% | | $114,449.58 | | | |
| | **Total** | **$484,605.72** | | | **$516,303.97** | | | |

| Claim No. | Creditor | Amount | Percentage | Sep 2018 - Nov 2019 | Payment by Dec. 2019 | | | Notes |
|---|---|---|---|---|---|---|---|---|
| | **ALTERNATIVE PAYMENT STRUCTURE - Approx. 39 months 10/2018 - 1/2022** | | | | | | | |
| | **Filed Claims** | | | | | | | |
| | | | | | | | | PAYMENTS TO BE APPLIED TO OLDEST LOAN FIRST, PER FFSB |
| | | | | $27,120.69 | Jan-20 | Jan-21 | Jan-22 | TOTAL |
| 8 | First Federal Savings Bank | $1,579.22 | 7% | | $554.92 | $554.92 | $725.47 | $1,835.31 |
| 9 | First Federal Savings Bank | $4,892.05 | 7% | | $1,719.00 | $1,719.00 | $2,247.38 | $5,685.38 |
| 10 | First Federal Savings Bank | $11,765.67 | | | $0.00 | $0.00 | $0.00 | $0.00 |
| | paid - vehicle sold | -$11,765.67 | | | $0.00 | $0.00 | $0.00 | $0.00 PAID |
| 11 | First Federal Savings Bank | $217,083.40 | 7% | | $76,280.35 | $76,280.35 | $99,726.04 | $252,286.74 |
| 12 | First Federal Savings Bank | $153,628.04 | 7% | | $53,982.94 | $53,982.94 | $70,575.26 | $178,541.14 |
| 13 | First Federal Savings Bank | $107,423.01 | 7% | | $37,747.08 | $37,747.08 | $49,349.12 | $124,843.28 |
| | **Total** | **$484,605.72** | | | **$170,284.29** | **$170,284.29** | **$222,623.27** | **$563,191.85** |

# EXHIBIT C-3

UNSECURED CLAIMS

| Claim No. | Creditor | Amount | *Percentage depends on lawsuit outcome, and bonuses | Payments | | | TOTAL | Notes |
|---|---|---|---|---|---|---|---|---|
| | | | | Jan-20 | Jan-21 | Jan-22 | | |
| | **Filed Claims** | | | | | | | |
| 1 | Bonneville Blueprint Supply | $224.26 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| 3 | Intermountain Gas Co. | 290.53 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| 4 | Selby's | $603.41 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| 5 | WHPacific, Inc. | $60,740.56 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| 6 | CenturyLink Communications, LLC | $7,992.39 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | disputed |
| 14 | Wells Fargo Financial Leasing, Inc. | $15,479.71 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| 15 | Avista Utilities | $177.95 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| 16 | Pitney Bowes Inc. | $1,117.28 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| 17 | Aaron L. Wert | $393,319.84 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | $385,819.09 secured by stock, now valueless |
| 18 | HMH Engineering | $4,901.48 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| 19 | De Lage Landen Financial Services | $20,348.42 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | reject |
| 21 | Carmen L. Dunham | $25,407.10 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | $25,407.10 secured by stock, now valueless |
| 22 | Pitney Bowes Global Financial Services LLC | $866.20 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| 24 | EverBank Commercial Finance, Inc. | $31,610.20 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| 25 | Worst, Fitzgerald & Stover, PLLC | $23,305.32 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| 26 | Marvin Kerbs | $63,482.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| 27 | Leaf Capital Funding | $22,783.19 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |

# EXHIBIT C-4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 28 | Eagle Transfer/Trina Co., Inc. | $9,078.38 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| 29 | Frontier Communications | $485.09 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| 30 | Donald Acheson | $113,196.32 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| 31 | Pitney Bowes Global Financial Services LLC | $1,159.64 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| | **TOTAL** | **$796,569.27** | 0.0% | $0.00 | $0.00 | $0.00 | **$0.00** |

Debtor has surrendered property to lessors

**Scheduled, Not Filed**

| | | | | | | |
|---|---|---|---|---|---|---|
| ALLWEST Testing & Engineering, LLC | $382.50 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| Association of Idaho Cities | $210.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| Bentley Systems, Inc. | $13,070.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| Blue Cross of Idaho | $7,762.02 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| Boise Offices Equipment | $98.86 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| Cable One | $1,072.64 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| Cache Valley Publishing | $143.26 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| City of Meridian | $29.51 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| City of Twin Falls | $98.22 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| Clearwater Economic Development Associat | $846.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| Credit Collection Services | $885.69 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| Culligan of Twin Falls | $129.85 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| Eagle Transfer / TrinaCo, Inc. | $8,796.43 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| Edward Jones | $9,234.55 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| Effective Life Management | $3,960.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| EideBailly LLP | $14,237.20 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| EverBank Commercial Finance, Inc. | $3,855.15 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| Farren Engineering, Inc. | $6,600.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| FedEx | $25.76 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| First Collection Services | $485.09 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| Frontier | $353.94 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| Geoline Inc. | $0.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| GeoTerra, Inc. | $16,415.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| Great West Engineering | $59,831.49 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |
| Greenberg, Grant & Richards, Inc. | $603.41 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 |

# EXHIBIT C-4

| | | | | | | |
|---|---|---|---|---|---|---|
| H&H Business Systems | $459.71 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Idaho Airport Management Association | $685.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Idaho County Prosecuting Attorney's Off | $0.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | unliquidated, disputed |
| Idaho Power | $94.32 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Idaho Springs Water Co. | $28.39 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| IMS | $195.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Inland Cellular Telephone | $95.41 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| IntegriNet | $7,107.25 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Jeremy Robbins | $0.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | unknown |
| JUB Engineers, Inc. | $639.83 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Kelly Services, Inc. | $1,666.66 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Key Design Websites LLC | $49.95 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Kim Nielsen | $0.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Kiwanis Club | $210.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| LEAF | $66.38 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Lerma Grover Law | $0.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Lighting Analysts | $400.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Martin G. Gergen | $11,132.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | Promissory Note |
| Marvin L. Kerbs | $60,000.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Media Collections, Inc. | $596.67 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| PSI Environmental Systems, Inc. | $23.56 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Purchase Power | $79.99 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Rex Harding | $0.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | .5 % equity holder |
| Robert Lee Sappington, Ph.D., RPA | $4,100.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Skypark Office Suites | $3,510.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| SOS Copy and Print | $29.34 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Southway Plaza, LLC | $18,500.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Staples Credit Plan | $43.66 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Synter Resource Group, LLC | $0.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| TD&H Engineering | $899.85 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| The Owyhee Avalanche | $63.14 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Tore Up | $122.50 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Trindera Engineering | $610.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Twin Falls Area Chamber of Commerce | $350.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |

# EXHIBIT C-4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Unified Office Services | $1,026.70 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| UPS | $128.38 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| | | | | | | | |
| Valley Paving & Asphalt, Inc. | $0.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Visa | $1,526.30 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| | | | | | | | |
| Wells Fargo Financial Leasing | $316.94 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Worst, Fitzgerald & Stover, P.L.L.C. | $22,987.90 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Xerox Financial Services | $8,156.98 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| **TOTAL** | **$295,028.38** | 0.0% | $0.00 | $0.00 | $0.00 | **$0.00** | |
| | | | | | | | |
| **Scheduled as secured cliams, but are unsecured because secured by valuless stock, or the property has been surrendered** | | | | | | | |
| Andrew Kimmel | $6,672.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Charles Vance | $362.47 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Donald Acheson | $110,805.68 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Ed R. Spears | $12,236.48 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | disputed |
| Freddie Garcia | $245.68 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| George E. Mustard | $10,425.00 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Leaf Capital Funding | $14,869.84 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| M. Kent Atkin | $6,249.60 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Martin G. Gergen | $321,888.66 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | Prommissory Note, secured by stock |
| Matthew C. Brander | $624.96 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Tracey S. McAuley | $525.20 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| Valerie Smith | $208.32 | 0.0% | $0.00 | $0.00 | $0.00 | $0.00 | |
| **TOTAL** | **$485,113.89** | 0.0% | $0.00 | $0.00 | $0.00 | **$0.00** | |
| | | | | | | | |
| | $796,569.27 | | | | | | |
| | $295,028.38 | | | | | | |
| | $485,113.89 | | | | | | |
| **Subtotal of Unsecured Claims** | **$1,576,711.54** | 0.0% | $0.00 | | | **$0.00** | |
| **Unsecured portion of priority claims** | **$76,085.35** | | | | | | |
| **Total Unsecured Claims** | **$1,652,796.89** | **0.0%** | **$0.00** | | | **$0.00** | |

# EXHIBIT C-4

# EXHIBIT D



**Riedesel Engineering, Inc.**
Basis: Accrual
Print accounts with activity

Thursday, August 16, 2018
Page 1 of 4

**Date Range from: 1/1/2015 to 12/31/2015**

| | YTD Balance | Prior YTD Balance | YTD Budget | Prior Year YTD Budget |
|---|---|---|---|---|
| **Income** | | | | |
| **Professional Services Revenues** | | | | |
| Professional Fees Billed | 2,201,224 | 2,167,676 | 3,000,000 | 2,745,000 |
| Lab Testing Fees | 6,012 | 13,048 | | |
| Unbilled Professional Fees | 75,382 | 62,179 | | |
| Professional Fees Write-off | -95,034 | -127,668 | | |
| **Total Professional Services Revenues** | 2,187,584 | 2,115,235 | 3,000,000 | 2,745,000 |
| **Reimburseable Expense Revenue** | | | | |
| Reimbursable Expenses | 57,250 | 82,390 | | 500,000 |
| Testing Fee Adjustment | -6,067 | -13,048 | | |
| Reimbursables - Other | 385 | | | |
| Sub-Consultants Billed | 200,288 | 159,965 | | |
| Unbilled Expenses | -4,229 | 2,884 | | |
| Unbilled Sub - Consultants Fees | 23,861 | 6,390 | | |
| Expenses Write-off | -9,022 | -322 | | |
| Sub-Consultants Write-off | -15,594 | -7,672 | | |
| **Total Reimburseable Expense Revenue** | 246,871 | 230,587 | | 500,000 |
| **Total Income** | **2,434,455** | **2,345,822** | **3,000,000** | **3,245,000** |
| | | | | |
| **Cost Of Sales** | | | | |
| | | | | |
| **Billable Cost** | | | | |
| **Direct Labor** | | | | |
| D-Project Wage Expense | 673,676 | 752,456 | 965,878 | 947,025 |
| **Total Direct Labor** | 673,676 | 752,456 | 965,878 | 947,025 |
| **Reimburseable Expense Cost** | | | | |
| D-Sub - Consultants Services Expense | 218,961 | 171,276 | | |
| D-Reimbursable Expenses | 6,103 | 12,518 | | 500,000 |
| D-Travel & Subsistance | 27,734 | 38,569 | | |
| D-Reproduction & Printing | -5,609 | 7,563 | | |
| D- Telephone | 2,701 | 80 | | |
| D-Postage, Shipping, Delivery | 1,487 | 28 | | |
| D-Misc. Expense | 559 | 204 | | |
| **Total Reimburseable Expense Cost** | 251,936 | 230,238 | | 500,000 |
| **Total Billable Cost** | **925,612** | **982,694** | **965,878** | **1,447,025** |
| | | | | |
| **Nonbillable Cost** | | | | |
| **DPE** | | | | |
| I-Payroll Tax Expense | 110,615 | 129,894 | | |
| I-SRA Contribution Expense | 19,485 | 26,694 | | |
| I-US Able Life | 4,154 | 5,029 | | |
| I-Stipend Benefits | 2,044 | 7,782 | | |
| I-Workers Compensation Insurance | 4,452 | 5,126 | | |
| I-Group Medical Ins. Expense | 151,412 | 176,579 | 339,863 | 295,911 |
| I- Misc. OH Expense | 774 | 1,042 | | |
| **Total DPE** | 292,936 | 352,145 | 339,863 | 295,911 |
| **Indirect Labor** | | | | |
| I-Vacation Salary Expense | 64,191 | 114,294 | | |
| I-Holiday Salary Expense | 19,502 | 21,552 | | |
| I-Sick Leave Salary Exp. | 32,189 | 39,682 | | |

# EXHIBIT D-1



**Riedesel Engineering, Inc.**
Basis: Accrual
Print accounts with activity

Thursday, August 16, 2018
Page 2 of 4

Date Range from: 1/1/2015 to 12/31/2015

| | YTD Balance | Prior YTD Balance | YTD Budget | Prior Year YTD Budget |
|---|---|---|---|---|
| I-Wages Expense | 494,576 | 592,361 | 524,752 | 549,000 |
| I-Bonus Expense | 7,683 | | | |
| **Total Indirect Labor** | 618,140 | 767,890 | 524,752 | 549,000 |
| **Total Nonbillable Cost** | **911,076** | **1,120,035** | **864,615** | **844,911** |
| **Total Cost Of Sales** | **1,836,689** | **2,102,729** | **1,830,493** | **2,291,936** |
| **Gross Margin** | **597,766** | **243,093** | **1,169,507** | **953,064** |
| **Expenses** | | | | |
| **Fees** | | | | |
| G-Recording Fees | 28 | | | |
| **Total Fees** | 28 | | | |
| **Communication** | | | | |
| G-Telephone Expense | 23,093 | 49,138 | 60,000 | 78,234 |
| G-Publications & Software unallowable | 6,727 | 15,249 | | |
| G-Publications and Software Allowable | 14,564 | 5,341 | | |
| **Total Communication** | 44,385 | 69,727 | 60,000 | 78,234 |
| **Depreciation Expense** | | | | |
| G-Depreciation | 39,154 | 37,049 | 60,000 | 45,780 |
| G-Depreciation Building | 1,762 | 9,186 | | |
| **Total Depreciation Expense** | 40,916 | 46,235 | 60,000 | 45,780 |
| **Dues & License** | | | | |
| G-Membership Dues Unallowable | -43 | 6,071 | | |
| G-Membership Dues - Allowable | 1,804 | 2,626 | | |
| G-Professional Registration | 3,001 | 1,321 | 18,000 | 11,256 |
| G-Professional Registration Lewiston | 967 | 440 | | |
| G-Professional Registration Lab | 3,400 | 105 | | |
| **Total Dues & License** | 9,128 | 10,564 | 18,000 | 11,256 |
| **Insurance** | | | | |
| G-Business Insurance | 26,581 | 25,928 | 33,600 | 29,646 |
| G-Key Owner Life Insurance (E) | 3,466 | 3,158 | | |
| **Total Insurance** | 30,047 | 29,086 | 33,600 | 29,646 |
| **Marketing & Business Development** | | | | |
| G-Business Development Unallowable (g) | 8,947 | 17,466 | 72,000 | |
| G-Allowable Business Development | 16,759 | 15,346 | | 49,410 |
| **Total Marketing & Business Development** | 25,706 | 32,812 | 72,000 | 49,410 |
| **Office Expense** | | | | |
| G-Interest Expense (a) | 38,789 | 48,543 | | |
| G-Interest Expense-Building (a) | 26,187 | 24,112 | | |
| G-Finance Charge/Late Fees (a) | 26,420 | 16,187 | | |
| G-Bank Charges (a) | 6,555 | 8,036 | | |
| G-Loan Fees (a) | 1,600 | 1,952 | | |
| G-Corporate Fees and Permits | 305 | 3,366 | | |
| G-Misc. Expense | 502 | 10,831 | | |
| G-Rent Expense | 63,800 | 66,815 | | |
| G-Lab/survey Equipment Rental Expense | 115 | 4,929 | | |
| G- Maintenance Expense | 13,093 | 13,694 | | |
| G- Maintenance Expense Lab | | 22 | | |
| G-Computer Maintenance | 26,977 | 11,814 | | |
| G-Engineering Supply | | 150 | | |

EXHIBIT D-1



**Riedesel Engineering, Inc.**
Basis: Accrual
Print accounts with activity

Thursday, August 16, 2018
Page 3 of 4

Date Range from: 1/1/2015 to 12/31/2015

Profit and Loss Statement

| | YTD Balance | Prior YTD Balance | YTD Budget | Prior Year YTD Budget |
|---|---|---|---|---|
| G-Surveying/Testing Supply | 5,613 | 4,910 | | |
| G-Surveying Supply Surveyors West | | 533 | | |
| G- Allowable Office Supplies/Expense | 13,185 | 15,583 | 312,000 | 209,994 |
| G-Non Allowable Office Expense | 3,054 | 1,175 | | |
| G-Postage - Shipping | 4,854 | 5,626 | | |
| G-Postage Shipping Non Allowable | 7 | 42 | | |
| G-Reproduction & Printing | 32,966 | 24,144 | | |
| G-Meal Expense Allowable | 3,228 | 4,162 | | |
| G-Meals Non allowable (b) | 1,098 | 291 | | |
| Non Allowable Mileage | | 5 | | |
| Vendor Write-off | -701 | -630 | | |
| **Total Office Expense** | **267,648** | **266,294** | **312,000** | **209,994** |
| **Professional Services** | | | | |
| G-Subconsultants | 84 | | | |
| G-Professional Accounting Services | 21,750 | 8,900 | 35,400 | 32,391 |
| G Professional Services (Collections) | 69 | 30 | | |
| G-Contracted Labor Expense | 4,250 | 1,534 | | |
| G-Professional Legal Services | 18,422 | -2,341 | | |
| G-Professional Consulting Services | | 2,301 | | |
| **Total Professional Services** | **44,575** | **10,423** | **35,400** | **32,391** |
| **Tax** | | | | |
| G-Misc. Tax | 7,090 | 5,261 | 9,000 | 8,235 |
| G-State Taxes | | 22 | | |
| **Total Tax** | **7,090** | **5,283** | **9,000** | **8,235** |
| **Utilities** | | | | |
| G-Utility Expense | 13,790 | 12,913 | 12,000 | 10,980 |
| G-Utilities Expense Meridian | | 121 | | |
| G-Crapo Expenses (H) | 1,207 | 1,444 | | |
| **Total Utilities** | **14,997** | **14,478** | **12,000** | **10,980** |
| **Vehicles & Travel** | | | | |
| G-Meetings/Training/Seminars Non allowable | 1,650 | 2,852 | | |
| G-Training/Seminars/Conferences Allowable | 13,063 | 3,420 | | |
| G-Travel & Subsistance Non allowable | 16,058 | 24,665 | 48,000 | 41,175 |
| G-Travel & Subsistance Allowable | 21,391 | 19,296 | | |
| G- Automobile Expense | 2,612 | 3,172 | | |
| **Total Vehicles & Travel** | **54,774** | **53,405** | **48,000** | **41,175** |
| **Amortization Expense** | | | | |
| G-Amortization Expense | | | | 1,098 |
| **Total Amortization Expense** | | | | **1,098** |
| **Total Expenses** | **539,293** | **538,307** | **660,000** | **518,199** |
| **Net Operating Income** | **58,473** | **-295,214** | **509,507** | **434,865** |
| **Other Income** | | | | |
| **Other Income and Expense** | | | | |
| Other Income | 8,564 | 856 | 21,600 | 32,940 |
| Finance Charges | 377 | -11,026 | | |
| Rental Income | 11,143 | 11,143 | 11,143 | |
| Gain/Loss Sale of Asset | -24,635 | | | |
| **Total Other Income and Expense** | **-4,550** | **973** | **32,743** | **32,940** |
| **Total Other Income** | **-4,550** | **973** | **32,743** | **32,940** |

EXHIBIT D-1



**Profit and Loss Statement**

Riedesel Engineering, Inc.
Basis: Accrual
Print accounts with activity

Thursday, August 16, 2018
Page 4 of 4

**Date Range from: 1/1/2015 to 12/31/2015**

| | | | | |
|---|---|---|---|---|
| **Net Income (Loss)** | 53,923 | -294,241 | 542,250 | 467,805 |

EXHIBIT D-1



**Profit and Loss Statement**

**Riedesel Engineering, Inc.**
Basis: Accrual
Print accounts with activity

Thursday, August 16, 2018
Page 1 of 3

Date Range from: 1/1/2016 to 12/31/2016

| | YTD Balance | Prior YTD Balance | YTD Budget | Prior Year YTD Budget |
|---|---|---|---|---|
| **Income** | | | | |
| **Professional Services Revenues** | | | | |
| Professional Fees Billed | 2,414,671 | 2,201,224 | 2,441,865 | 3,000,000 |
| Lab Testing Fees | | 6,012 | | |
| Unbilled Professional Fees | 23,021 | 75,382 | | |
| Professional Fees Write-off | -40,604 | -95,034 | -72,072 | |
| **Total Professional Services Revenues** | 2,397,088 | 2,187,584 | 2,369,793 | 3,000,000 |
| **Reimburseable Expense Revenue** | | | | |
| Reimbursable Expenses | 135,016 | 57,250 | | |
| Testing Fee Adjustment | | -6,067 | | |
| Reimbursables - Other | 60 | 385 | | |
| Sub-Consultants Billed | 283,263 | 200,288 | | |
| Unbilled Expenses | -8,437 | -4,229 | | |
| Unbilled Sub - Consultants Fees | 21,776 | 23,861 | | |
| Expenses Write-off | 7,791 | -9,022 | | |
| Sub-Consultants Write-off | -13,778 | -15,594 | | |
| **Total Reimburseable Expense Revenue** | 425,691 | 246,871 | | |
| **Total Income** | **2,822,779** | **2,434,455** | **2,369,793** | **3,000,000** |
| | | | | |
| **Cost Of Sales** | | | | |
| | | | | |
| **Billable Cost** | | | | |
| **Direct Labor** | | | | |
| D-Project Wage Expense | 760,136 | 673,676 | 763,082 | 965,878 |
| **Total Direct Labor** | 760,136 | 673,676 | 763,082 | 965,878 |
| **Reimburseable Expense Cost** | | | | |
| D-Sub - Consultants Services Expense | 324,281 | 218,961 | | |
| D-Reimbursable Expenses | 57,061 | 6,103 | | |
| D-Travel & Subsistance | 72,712 | 27,734 | 28,320 | |
| D-Reproduction & Printing | 1,271 | -5,609 | | |
| D- Telephone | 3,450 | 2,701 | 3,600 | |
| D-Postage, Shipping, Delivery | 783 | 1,487 | | |
| D-Misc. Expense | | 559 | | |
| **Total Reimburseable Expense Cost** | 459,558 | 251,936 | 31,920 | |
| **Total Billable Cost** | **1,219,694** | **925,612** | **795,002** | **965,878** |
| | | | | |
| **Nonbillable Cost** | | | | |
| **DPE** | | | | |
| I-Payroll Tax Expense | 110,818 | 110,615 | 102,086 | |
| I-SRA Contribution Expense | 27,199 | 19,485 | 19,380 | |
| I-US Able Life | 4,391 | 4,154 | 5,916 | |
| I-Stipend Benefits | 3,000 | 2,044 | 2,232 | |
| I-Workers Compensation Insurance | 8,201 | 4,452 | 5,508 | |
| I-Group Medical Ins. Expense | 148,093 | 151,412 | 162,360 | 339,863 |
| I- Misc. OH Expense | 25 | 774 | 9,240 | |
| **Total DPE** | 301,727 | 292,936 | 306,722 | 339,863 |
| **Indirect Labor** | | | | |
| I-Vacation Salary Expense | 75,909 | 64,191 | | |
| I-Holiday Salary Expense | 22,064 | 19,502 | 116,058 | |
| I-Sick Leave Salary Exp. | 28,274 | 32,189 | | |

EXHIBIT D-2



**Profit and Loss Statement**

Riedesel Engineering, Inc.
Basis: Accrual
Print accounts with activity

Thursday, August 16, 2018
Page 2 of 3

Date Range from: 1/1/2016 to 12/31/2016

| | YTD Balance | Prior YTD Balance | YTD Budget | Prior Year YTD Budget |
|---|---:|---:|---:|---:|
| I-Wages Expense | 468,020 | 494,576 | 337,614 | 524,752 |
| I-Bonus Expense | | 7,683 | | |
| **Total Indirect Labor** | 594,268 | 618,140 | 453,672 | 524,752 |
| **Total Nonbillable Cost** | **895,994** | **911,076** | **760,394** | **864,615** |
| **Total Cost Of Sales** | **2,115,688** | **1,836,689** | **1,555,396** | **1,830,493** |
| **Gross Margin** | **707,091** | **597,766** | **814,397** | **1,169,507** |
| **Expenses** | | | | |
| **Fees** | | | | |
| G-Recording Fees | 108 | 28 | | |
| **Total Fees** | 108 | 28 | | |
| **Communication** | | | | |
| G-Telephone Expense | 28,269 | 23,093 | 12,600 | 60,000 |
| G-Publications & Software unallowable | -715 | 6,727 | | |
| G-Publications and Software Allowable | 18,901 | 14,564 | 18,000 | |
| **Total Communication** | 46,455 | 44,385 | 30,600 | 60,000 |
| **Depreciation Expense** | | | | |
| G-Depreciation | 16,315 | 39,154 | 37,200 | 60,000 |
| G-Depreciation Building | 918 | 1,762 | | |
| **Total Depreciation Expense** | 17,233 | 40,916 | 37,200 | 60,000 |
| **Dues & License** | | | | |
| G-Membership Dues Unallowable | 4,630 | -43 | | |
| G-Membership Dues - Allowable | 45 | 1,804 | | |
| G-Professional Registration | 51 | 3,001 | | 18,000 |
| G-Professional Registration Lewiston | 1,273 | 967 | | |
| G-Professional Registration Lab | | 3,400 | | |
| **Total Dues & License** | 5,999 | 9,128 | | 18,000 |
| **Insurance** | | | | |
| G-Business Insurance | 25,562 | 26,581 | 28,800 | 33,600 |
| G-Key Owner Life Insurance (E) | 3,158 | 3,466 | 3,300 | |
| **Total Insurance** | 28,720 | 30,047 | 32,100 | 33,600 |
| **Marketing & Business Development** | | | | |
| G-Recruiting Employees | 9,168 | | | |
| G-Advertising (c) | 395 | | | |
| G-Business Development Unallowable (g) | 6,198 | 8,947 | | 72,000 |
| G-Allowable Business Development | 13,690 | 16,759 | 23,400 | |
| **Total Marketing & Business Development** | 29,450 | 25,706 | 23,400 | 72,000 |
| **Office Expense** | | | | |
| G-Interest Expense (a) | 37,280 | 38,789 | 54,000 | |
| G-Interest Expense-Building (a) | 5,058 | 26,187 | | |
| G-Finance Charge/Late Fees (a) | 3,453 | 26,420 | 15,600 | |
| G-Bank Charges (a) | 5,784 | 6,555 | 6,000 | |
| G-Loan Fees (a) | 507 | 1,600 | | |
| G-Corporate Fees and Permits | 182 | 305 | | |
| G-Misc. Expense | 75 | 502 | | |
| G-Rent Expense | 88,611 | 63,800 | 105,900 | |
| G-Lab/survey Equipment Rental Expense | | 115 | | |
| G- Maintenance Expense | 9,584 | 13,093 | 14,400 | |
| G-Computer Maintenance | 32,853 | 26,977 | 28,800 | |

EXHIBIT D-2



**Riedesel Engineering, Inc.**
Basis: Accrual
Print accounts with activity

Thursday, August 16, 2018
Page 3 of 3

**Date Range from: 1/1/2016 to 12/31/2016**

| | YTD Balance | Prior YTD Balance | YTD Budget | Prior Year YTD Budget |
|---|---|---|---|---|
| G-Engineering Supply | 253 | | | |
| G-Surveying/Testing Supply | 7,353 | 5,613 | 7,200 | |
| G-Surveying Supply Surveyors West | 149 | | | |
| G- Allowable Office Supplies/Expense | 21,716 | 13,185 | 12,000 | 312,000 |
| G-Non Allowable Office Expense | 2,549 | 3,054 | | |
| G-Postage - Shipping | 5,226 | 4,854 | 5,400 | |
| G-Postage Shipping Non Allowable | 206 | 7 | | |
| G-Reproduction & Printing | 31,316 | 32,966 | 33,600 | |
| G-Meal Expense Allowable | 1,113 | 3,228 | 4,200 | |
| G-Meals Non allowable (b) | 1,462 | 1,098 | | |
| Vendor Write-off | -531 | -701 | | |
| **Total Office Expense** | 254,199 | 267,648 | 287,100 | 312,000 |
| **Professional Services** | | | | |
| G-Subconsultants | 410 | 84 | | |
| G-Professional Accounting Services | 20,361 | 21,750 | 18,000 | 35,400 |
| G Professional Services (Collections) | | 69 | | |
| G-Contracted Labor Expense | 3,305 | 4,250 | | |
| G-Professional Legal Services | 9,390 | 18,422 | 12,000 | |
| G-Professional Consulting Services | 903 | | | |
| **Total Professional Services** | 34,368 | 44,575 | 30,000 | 35,400 |
| **Tax** | | | | |
| G-Misc. Tax | 8,479 | 7,090 | 6,000 | 9,000 |
| **Total Tax** | 8,479 | 7,090 | 6,000 | 9,000 |
| **Utilities** | | | | |
| G-Utility Expense | 10,873 | 13,790 | | 12,000 |
| G-Crapo Expenses (H) | 2,356 | 1,207 | | |
| **Total Utilities** | 13,229 | 14,997 | | 12,000 |
| **Vehicles & Travel** | | | | |
| G-Meetings/Training/Seminars Non allowable | 490 | 1,650 | | |
| G-Training/Seminars/Conferences Allowable | 12,359 | 13,063 | 10,860 | |
| G-Travel & Subsistance Non allowable | 2,197 | 16,058 | 16,320 | 48,000 |
| G-Travel & Subsistance Allowable | 34,198 | 21,391 | 23,460 | |
| G- Automobile Expense | 1,492 | 2,612 | | |
| **Total Vehicles & Travel** | 50,736 | 54,774 | 50,640 | 48,000 |
| **Total Expenses** | 488,977 | 539,293 | 497,040 | 660,000 |
| **Net Operating Income** | 218,114 | 58,473 | 317,357 | 509,507 |
| **Other Income** | | | | |
| **Other Income and Expense** | | | | |
| Other Income | 410 | 8,564 | | 21,600 |
| Finance Charges | -435 | 377 | | |
| Rental Income | 3,714 | 11,143 | | 11,143 |
| Gain/Loss Sale of Asset | -4,171 | -24,635 | | |
| **Total Other Income and Expense** | -481 | -4,550 | | 32,743 |
| **Total Other Income** | -481 | -4,550 | | 32,743 |
| **Net Income (Loss)** | 217,633 | 53,923 | 317,357 | 542,250 |

EXHIBIT D-2



**Profit and Loss Statement**

**Riedesel Engineering, Inc.**
Basis: Accrual
Print accounts with activity

Thursday, August 16, 2018
Page 1 of 3

**Date Range from: 1/1/2017 to 12/31/2017**

| | YTD Balance | Prior YTD Balance | YTD Budget | Prior Year YTD Budget |
|---|---|---|---|---|
| **Income** | | | | |
| **Professional Services Revenues** | | | | |
| Professional Fees Billed | 1,615,241 | 2,414,671 | 2,639,679 | 2,441,865 |
| Professional Fees - Other | 2,642 | | | |
| Unbilled Professional Fees | 36,233 | 23,021 | | |
| Professional Fees Write-off | -80,097 | -40,604 | -77,749 | -72,072 |
| **Total Professional Services Revenues** | 1,574,019 | 2,397,088 | 2,561,930 | 2,369,793 |
| **Reimburseable Expense Revenue** | | | | |
| Reimbursable Expenses | 14,683 | 135,016 | | |
| Reimbursables - Other | | 60 | | |
| Sub-Consultants Billed | 188,888 | 283,263 | | |
| Unbilled Expenses | -288 | -8,437 | | |
| Unbilled Sub - Consultants Fees | -16,719 | 21,776 | | |
| Expenses Write-off | -942 | 7,791 | | |
| Sub-Consultants Write-off | 462 | -13,778 | | |
| **Total Reimburseable Expense Revenue** | 186,085 | 425,691 | | |
| **Total Income** | **1,760,104** | **2,822,779** | **2,561,930** | **2,369,793** |
| | | | | |
| **Cost Of Sales** | | | | |
| | | | | |
| **Billable Cost** | | | | |
| **Direct Labor** | | | | |
| D-Project Wage Expense | 535,932 | 760,136 | 824,900 | 763,082 |
| **Total Direct Labor** | 535,932 | 760,136 | 824,900 | 763,082 |
| **Reimburseable Expense Cost** | | | | |
| D-Sub - Consultants Services Expense | 226,723 | 324,281 | | |
| D-Reimbursable Expenses | 4,361 | 57,061 | | |
| D-Travel & Subsistance | 17,244 | 72,712 | 28,200 | 28,320 |
| D-Reproduction & Printing | 826 | 1,271 | | |
| D- Telephone | 2,750 | 3,450 | 3,600 | 3,600 |
| D-Postage, Shipping, Delivery | 487 | 783 | | |
| D-Misc. Expense | 28 | | | |
| **Total Reimburseable Expense Cost** | 252,418 | 459,558 | 31,800 | 31,920 |
| **Total Billable Cost** | **788,350** | **1,219,694** | **856,700** | **795,002** |
| | | | | |
| **Nonbillable Cost** | | | | |
| **DPE** | | | | |
| I-Payroll Tax Expense WA | -158 | | | |
| I-Payroll Tax Expense | 112,334 | 110,818 | 102,724 | 102,086 |
| I-SRA Contribution Expense | 24,875 | 27,199 | 19,380 | 19,380 |
| I-US Able Life | 3,538 | 4,391 | 5,916 | 5,916 |
| I-Stipend Benefits | 300 | 3,000 | 2,232 | 2,232 |
| I-Workers Compensation Insurance | 3,998 | 8,201 | 5,508 | 5,508 |
| I-Group Medical Ins. Expense | 145,113 | 148,093 | 171,600 | 162,360 |
| I- Misc. OH Expense | 356 | 25 | | 9,240 |
| **Total DPE** | 290,357 | 301,727 | 307,360 | 306,722 |
| **Indirect Labor** | | | | |
| I-Vacation Salary Expense | 70,952 | 75,909 | 80,299 | |
| I-PTO Salary Expense | -1,966 | | | |
| I-Holiday Salary Expense | 18,460 | 22,064 | 23,420 | 116,058 |

EXHIBIT D-3



**Riedesel Engineering, Inc.**
Basis: Accrual
Print accounts with activity

Thursday, August 16, 2018
Page 2 of 3

**Date Range from: 1/1/2017 to 12/31/2017**

Profit and Loss Statement

| | YTD Balance | Prior YTD Balance | YTD Budget | Prior Year YTD Budget |
|---|---|---|---|---|
| I-Sick Leave Salary Exp. | 48,092 | 28,274 | 30,112 | |
| I-Wages Expense | 619,623 | 468,020 | 376,047 | 337,614 |
| I-Other Compensation | 27,562 | | | |
| **Total Indirect Labor** | 782,723 | 594,268 | 509,878 | 453,672 |
| **Total Nonbillable Cost** | **1,073,079** | **895,994** | **817,238** | **760,394** |
| **Total Cost Of Sales** | **1,861,429** | **2,115,688** | **1,673,938** | **1,555,396** |
| **Gross Margin** | **-101,326** | **707,091** | **887,992** | **814,397** |
| **Expenses** | | | | |
| **Fees** | | | | |
| G-Recording Fees | 69 | 108 | | |
| **Total Fees** | 69 | 108 | | |
| **Communication** | | | | |
| G-Telephone Expense | 12,145 | 28,269 | 12,600 | 12,600 |
| G-Publications & Software unallowable | | -715 | | |
| G-Publications and Software Allowable | 34,443 | 18,901 | 18,000 | 18,000 |
| **Total Communication** | 46,588 | 46,455 | 30,600 | 30,600 |
| **Depreciation Expense** | | | | |
| G-Depreciation | 9,284 | 16,315 | 18,000 | 37,200 |
| G-Depreciation Building | | 918 | | |
| **Total Depreciation Expense** | 9,284 | 17,233 | 18,000 | 37,200 |
| **Dues & License** | | | | |
| G-Membership Dues Unallowable | 960 | 4,630 | | |
| G-Membership Dues - Allowable | 4,897 | 45 | | |
| G-Professional Registration | 196 | 51 | | |
| G-Professional Registration Lewiston | 837 | 1,273 | | |
| **Total Dues & License** | 6,890 | 5,999 | | |
| **Insurance** | | | | |
| G-Business Insurance | 24,879 | 25,562 | 28,800 | 28,800 |
| G-Key Owner Life Insurance (E) | 3,431 | 3,158 | 3,300 | 3,300 |
| **Total Insurance** | 28,310 | 28,720 | 32,100 | 32,100 |
| **Marketing & Business Development** | | | | |
| G-Recruiting Employees | 5,200 | 9,168 | | |
| G-Advertising (c) | 150 | 395 | | |
| G-Business Development Unallowable (g) | 3,471 | 6,198 | | |
| G-Allowable Business Development | 10,700 | 13,690 | 23,400 | 23,400 |
| **Total Marketing & Business Development** | 19,522 | 29,450 | 23,400 | 23,400 |
| **Office Expense** | | | | |
| G-Interest Expense (a) | 192,564 | 37,280 | 36,000 | 54,000 |
| G-Interest Expense-Building (a) | | 5,058 | | |
| G-Finance Charge/Late Fees (a) | 16,136 | 3,453 | 15,600 | 15,600 |
| G-Bank Charges (a) | 5,726 | 5,784 | 6,000 | 6,000 |
| G-Loan Fees (a) | 1,128 | 507 | | |
| G-Corporate Fees and Permits | 1,077 | 182 | | |
| G-Misc. Expense | 510 | 75 | | |
| G-Rent Expense | 92,102 | 88,611 | 105,900 | 105,900 |
| G- Maintenance Expense | 6,315 | 9,584 | 14,400 | 14,400 |
| G-Computer Maintenance | 23,177 | 32,853 | 18,000 | 28,800 |
| G-Engineering Supply | 13 | 253 | | |

EXHIBIT D-3



Profit and Loss Statement

**Riedesel Engineering, Inc.**
Basis: Accrual
Print accounts with activity

Thursday, August 16, 2018
Page 3 of 3

**Date Range from: 1/1/2017 to 12/31/2017**

| | YTD Balance | Prior YTD Balance | YTD Budget | Prior Year YTD Budget |
|---|---|---|---|---|
| G-Surveying/Testing Supply | 1,377 | 7,353 | 7,200 | 7,200 |
| G-Surveying Supply Surveyors West | 85 | 149 | | |
| G- Allowable Office Supplies/Expense | 8,749 | 21,716 | 18,000 | 12,000 |
| G-Non Allowable Office Expense | 13 | 2,549 | | |
| G-Postage - Shipping | 2,851 | 5,226 | 5,400 | 5,400 |
| G-Postage Shipping Non Allowable | | 206 | | |
| G-Reproduction & Printing | 37,717 | 31,316 | 33,600 | 33,600 |
| G-Meal Expense Allowable | 1,634 | 1,113 | 4,200 | 4,200 |
| G-Meals Non allowable (b) | 43 | 1,462 | | |
| Vendor Write-off | -23,858 | -531 | | |
| **Total Office Expense** | 367,359 | 254,199 | 264,300 | 287,100 |
| **Professional Services** | | | | |
| G-Subconsultants | | 410 | | |
| G-Professional Accounting Services | 14,060 | 20,361 | 18,000 | 18,000 |
| G-Contracted Labor Expense | 1,164 | 3,305 | | |
| G-Professional Legal Services | 26,539 | 9,390 | 12,000 | 12,000 |
| G-Professional Consulting Services | 1,455 | 903 | | |
| **Total Professional Services** | 43,218 | 34,368 | 30,000 | 30,000 |
| **Tax** | | | | |
| G-Misc. Tax | 939 | 8,479 | 6,000 | 6,000 |
| **Total Tax** | 939 | 8,479 | 6,000 | 6,000 |
| **Utilities** | | | | |
| G-Utility Expense | 8,830 | 10,873 | | |
| G-Crapo Expenses (H) | | 2,356 | | |
| **Total Utilities** | 8,830 | 13,229 | | |
| **Vehicles & Travel** | | | | |
| G-Meetings/Training/Seminars Non allowable | 400 | 490 | | |
| G-Training/Seminars/Conferences Allowable | 11,689 | 12,359 | 10,860 | 10,860 |
| G-Travel & Subsistance Non allowable | 1,115 | 2,197 | 16,320 | 16,320 |
| G-Travel & Subsistance Allowable | 38,048 | 34,198 | 23,460 | 23,460 |
| G- Automobile Expense | 6,171 | 1,492 | | |
| **Total Vehicles & Travel** | 57,422 | 50,736 | 50,640 | 50,640 |
| **Total Expenses** | **588,431** | **488,977** | **455,040** | **497,040** |
| **Net Operating Income** | **-689,756** | **218,114** | **432,952** | **317,357** |
| **Other Income** | | | | |
| **Other Income and Expense** | | | | |
| Other Income | -1,562 | 410 | | |
| Finance Charges | -6 | -435 | | |
| Rental Income | | 3,714 | | |
| Gain/Loss Sale of Asset | 550 | -4,171 | | |
| **Total Other Income and Expense** | -1,018 | -481 | | |
| **Total Other Income** | **-1,018** | **-481** | | |
| **Net Income (Loss)** | **-690,774** | **217,633** | **432,952** | **317,357** |

EXHIBIT D-3



Profit and Loss Statement

**Riedesel Engineering, Inc.**
Basis: Accrual
Print accounts with activity

Thursday, August 16, 2018
Page 1 of 3

Date Range from: 1/1/2018 to 3/15/2018

|  | YTD Balance | Prior YTD Balance | YTD Budget | Prior Year YTD Budget |
|---|---|---|---|---|
| **Income** | | | | |
| **Professional Services Revenues** | | | | |
| Professional Fees Billed | 144,506 | 280,891 | | 659,920 |
| Unbilled Professional Fees | 68,523 | 29,410 | | |
| Professional Fees Write-off | -10,518 | -21,069 | | -19,437 |
| **Total Professional Services Revenues** | 202,511 | 289,232 | | 640,483 |
| **Reimburseable Expense Revenue** | | | | |
| Reimbursable Expenses | -175 | 1,918 | | |
| Sub-Consultants Billed | 19,386 | 56,062 | | |
| Unbilled Expenses | 732 | -34 | | |
| Unbilled Sub - Consultants Fees | 18,181 | -19,267 | | |
| Expenses Write-off | | -1,005 | | |
| Sub-Consultants Write-off | 900 | -1,703 | | |
| **Total Reimburseable Expense Revenue** | 39,024 | 35,972 | | |
| **Total Income** | **241,535** | **325,203** | | **640,483** |
| | | | | |
| **Cost Of Sales** | | | | |
| | | | | |
| **Billable Cost** | | | | |
| **Direct Labor** | | | | |
| D-Project Wage Expense | 59,667 | 108,218 | | 206,225 |
| **Total Direct Labor** | 59,667 | 108,218 | | 206,225 |
| **Reimburseable Expense Cost** | | | | |
| D-Sub - Consultants Services Expense | 49,747 | 38,065 | | |
| D-Reimbursable Expenses | 32 | 2,516 | | |
| D-Travel & Subsistance | 999 | 868 | | 7,050 |
| D-Reproduction & Printing | | 533 | | |
| D- Telephone | 500 | 759 | | 900 |
| D-Postage, Shipping, Delivery | 154 | 83 | | |
| **Total Reimburseable Expense Cost** | 51,432 | 42,825 | | 7,950 |
| **Total Billable Cost** | **111,099** | **151,043** | | **214,175** |
| | | | | |
| **Nonbillable Cost** | | | | |
| **DPE** | | | | |
| I-Payroll Tax Expense | 13,244 | 25,825 | | 25,681 |
| I-SRA Contribution Expense | 1,094 | 5,348 | | 4,845 |
| I-US Able Life | 404 | 835 | | 1,479 |
| I-Stipend Benefits | | 300 | | 558 |
| I-Workers Compensation Insurance | 426 | 1,256 | | 1,377 |
| I-Group Medical Ins. Expense | 14,478 | 32,163 | | 42,900 |
| I- Misc. OH Expense | 65 | 126 | | |
| **Total DPE** | 29,710 | 65,853 | | 76,840 |
| **Indirect Labor** | | | | |
| I-Vacation Salary Expense | | 6,590 | | 20,075 |
| I-PTO Salary Expense | 6,511 | | | |
| I-Holiday Salary Expense | 2,277 | 4,228 | | 5,855 |
| I-Sick Leave Salary Exp. | | 7,806 | | 7,528 |
| I-Wages Expense | 84,753 | 140,016 | | 94,012 |
| **Total Indirect Labor** | 93,541 | 158,641 | | 127,470 |
| **Total Nonbillable Cost** | **123,252** | **224,493** | | **204,310** |

EXHIBIT D-4



**Riedesel Engineering, Inc.**
Basis: Accrual
Print accounts with activity

Thursday, August 16, 2018
Page 2 of 3

**Profit and Loss Statement**

Date Range from: 1/1/2018 to 3/15/2018

| | YTD Balance | Prior YTD Balance | YTD Budget | Prior Year YTD Budget |
|---|---:|---:|---:|---:|
| **Total Cost Of Sales** | **234,350** | **375,536** | | **418,485** |
| **Gross Margin** | **7,185** | **-50,333** | | **221,998** |
| **Expenses** | | | | |
| **Fees** | | | | |
| G-Recording Fees | | 44 | | |
| **Total Fees** | | 44 | | |
| **Communication** | | | | |
| G-Telephone Expense | 1,541 | -932 | | 3,150 |
| G-Publications and Software Allowable | 9,940 | 8,783 | | 4,500 |
| **Total Communication** | 11,481 | 7,851 | | 7,650 |
| **Depreciation Expense** | | | | |
| G-Depreciation | 1,985 | 1,547 | | 4,500 |
| **Total Depreciation Expense** | 1,985 | 1,547 | | 4,500 |
| **Dues & License** | | | | |
| G-Membership Dues Unallowable | | 3,680 | | |
| G-Membership Dues - Allowable | 100 | 1,540 | | |
| **Total Dues & License** | 100 | 5,220 | | |
| **Insurance** | | | | |
| G-Business Insurance | 3,766 | 4,083 | | 7,200 |
| G-Key Owner Life Insurance (E) | 572 | 862 | | 825 |
| **Total Insurance** | 4,338 | 4,945 | | 8,025 |
| **Marketing & Business Development** | | | | |
| G-Advertising (c) | | 100 | | |
| G-Business Development Unallowable (g) | 12 | 925 | | |
| G-Allowable Business Development | 154 | 2,178 | | 5,850 |
| **Total Marketing & Business Development** | 165 | 3,203 | | 5,850 |
| **Office Expense** | | | | |
| G-Interest Expense (a) | 524 | 6,067 | | 9,000 |
| G-Finance Charge/Late Fees (a) | 1,255 | 718 | | 3,900 |
| G-Bank Charges (a) | 756 | 1,335 | | 1,500 |
| G-Loan Fees (a) | | 265 | | |
| G-Corporate Fees and Permits | 335 | 276 | | |
| G-Misc. Expense | 374 | | | |
| G-Rent Expense | 7,831 | 23,082 | | 26,475 |
| G- Maintenance Expense | | 1,323 | | 3,600 |
| G-Computer Maintenance | 527 | 6,846 | | 4,500 |
| G-Surveying/Testing Supply | | 423 | | 1,800 |
| G- Allowable Office Supplies/Expense | 1,142 | 3,154 | | 4,500 |
| G-Non Allowable Office Expense | | 13 | | |
| G-Postage - Shipping | 8,858 | 636 | | 1,350 |
| G-Reproduction & Printing | 5,615 | 8,652 | | 8,400 |
| G-Meal Expense Allowable | 199 | 187 | | 1,050 |
| G-Meals Non allowable (b) | | 49 | | |
| Vendor Write-off | -89 | -651 | | |
| **Total Office Expense** | 27,328 | 52,375 | | 66,075 |
| **Professional Services** | | | | |
| G-Professional Accounting Services | 177 | | | 4,500 |
| G-Professional Legal Services | 1,917 | 5,146 | | 3,000 |
| G-Professional Consulting Services | | 1,500 | | |

EXHIBIT D-4



**Riedesel Engineering, Inc.**
Basis: Accrual
Print accounts with activity

Thursday, August 16, 2018
Page 3 of 3

**Date Range from: 1/1/2018 to 3/15/2018**

|  | YTD Balance | Prior YTD Balance | YTD Budget | Prior Year YTD Budget |
|---|---|---|---|---|
| **Total Professional Services** | 2,094 | 6,646 |  | 7,500 |
| **Tax** |  |  |  |  |
| G-Misc. Tax | 315 | 10 |  | 1,500 |
| **Total Tax** | 315 | 10 |  | 1,500 |
| **Utilities** |  |  |  |  |
| G-Utility Expense | 1,558 | 1,854 |  |  |
| **Total Utilities** | 1,558 | 1,854 |  |  |
| **Vehicles & Travel** |  |  |  |  |
| G-Training/Seminars/Conferences Allowable | 150 | 5,427 |  | 2,715 |
| G-Travel & Subsistance Non allowable | 95 | 352 |  | 4,080 |
| G-Travel & Subsistance Allowable | 8,348 | 2,301 |  | 5,865 |
| G- Automobile Expense | 1,944 | 9 |  |  |
| **Total Vehicles & Travel** | 10,536 | 8,089 |  | 12,660 |
| **Total Expenses** | **59,901** | **91,784** |  | **113,760** |
| **Net Operating Income** | **-52,716** | **-142,117** |  | **108,238** |
| **Other Income** |  |  |  |  |
| **Other Income and Expense** |  |  |  |  |
| Other Income |  | -2,009 |  |  |
| Finance Charges |  | 2 |  |  |
| **Total Other Income and Expense** |  | -2,006 |  |  |
| **Total Other Income** |  | **-2,006** |  |  |
| **Net Income (Loss)** | **-52,716** | **-144,123** |  | **108,238** |

EXHIBIT D-4



Riedesel Engineering, Inc.
Basis: Accrual
Print accounts with activity

Thursday, August 16, 2018
Page 1 of 3

**Profit and Loss Statement**

**Date Range from: 3/16/2018 to 7/31/2018**

| | YTD Balance | Prior YTD Balance | YTD Budget | Prior Year YTD Budget |
|---|---|---|---|---|
| **Income** | | | | |
| **Professional Services Revenues** | | | | |
| Professional Fees Billed | 450,736 | 895,917 | | 1,539,813 |
| Professional Fees - Other | | 2,642 | | |
| Unbilled Professional Fees | 45,626 | 136,159 | | |
| Professional Fees Write-off | -9,702 | -58,721 | | -45,354 |
| **Total Professional Services Revenues** | 486,660 | 975,997 | | 1,494,459 |
| **Reimburseable Expense Revenue** | | | | |
| Reimbursable Expenses | 971 | 6,812 | | |
| Sub-Consultants Billed | 41,293 | 103,994 | | |
| Unbilled Expenses | 173 | 4,582 | | |
| Unbilled Sub - Consultants Fees | 24,789 | 18,191 | | |
| Expenses Write-off | | -1,147 | | |
| Sub-Consultants Write-off | 4,932 | -1,519 | | |
| **Total Reimburseable Expense Revenue** | 72,159 | 130,912 | | |
| **Total Income** | **558,819** | **1,106,909** | | **1,494,459** |
| | | | | |
| **Cost Of Sales** | | | | |
| | | | | |
| **Billable Cost** | | | | |
| **Direct Labor** | | | | |
| D-Project Wage Expense | 146,532 | 341,316 | | 481,192 |
| **Total Direct Labor** | 146,532 | 341,316 | | 481,192 |
| **Reimburseable Expense Cost** | | | | |
| D-Sub - Consultants Services Expense | 92,445 | 131,280 | | |
| D-Reimbursable Expenses | 455 | 3,961 | | |
| D-Travel & Subsistance | 3,276 | 10,341 | | 16,450 |
| D-Reproduction & Printing | 16 | 747 | | |
| D- Telephone | 1,250 | 909 | | 2,100 |
| D-Postage, Shipping, Delivery | 347 | 178 | | |
| **Total Reimburseable Expense Cost** | 97,789 | 147,417 | | 18,550 |
| **Total Billable Cost** | **244,321** | **488,733** | | **499,742** |
| | | | | |
| **Nonbillable Cost** | | | | |
| **DPE** | | | | |
| I-Payroll Tax Expense WA | 15 | -158 | | |
| I-Payroll Tax Expense | 31,870 | 69,798 | | 59,922 |
| I-SRA Contribution Expense | 2,954 | 17,007 | | 11,305 |
| I-US Able Life | 1,036 | 2,476 | | 3,451 |
| I-Stipend Benefits | | 300 | | 1,302 |
| I-Workers Compensation Insurance | 44 | 2,273 | | 3,213 |
| I-Group Medical Ins. Expense | 42,559 | 89,177 | | 100,100 |
| I- Misc. OH Expense | 305 | 126 | | |
| **Total DPE** | 78,784 | 180,998 | | 179,293 |
| **Indirect Labor** | | | | |
| I-Vacation Salary Expense | | 46,618 | | 46,841 |
| I-PTO Salary Expense | 26,765 | | | |
| I-Holiday Salary Expense | 7,450 | 10,985 | | 13,662 |
| I-Sick Leave Salary Exp. | | 23,830 | | 17,565 |
| I-Wages Expense | 229,397 | 378,935 | | 219,361 |

EXHIBIT D-5



**Riedesel Engineering, Inc.**
Basis: Accrual
Print accounts with activity

Thursday, August 16, 2018
Page 2 of 3

**Date Range from: 3/16/2018 to 7/31/2018**

| | YTD Balance | Prior YTD Balance | YTD Budget | Prior Year YTD Budget |
|---|---|---|---|---|
| I-Other Compensation | | 27,562 | | |
| **Total Indirect Labor** | 263,612 | 487,930 | | 297,429 |
| **Total Nonbillable Cost** | 342,396 | 668,928 | | 476,722 |
| **Total Cost Of Sales** | 586,717 | 1,157,661 | | 976,464 |
| **Gross Margin** | -27,898 | -50,753 | | 517,995 |
| **Expenses** | | | | |
| **Fees** | | | | |
| G-Recording Fees | 40 | 69 | | |
| **Total Fees** | 40 | 69 | | |
| **Communication** | | | | |
| G-Telephone Expense | 3,973 | 7,163 | | 7,350 |
| G-Publications and Software Allowable | 21,900 | 13,950 | | 10,500 |
| **Total Communication** | 25,873 | 21,113 | | 17,850 |
| **Depreciation Expense** | | | | |
| G-Depreciation | 6,762 | 5,416 | | 10,500 |
| **Total Depreciation Expense** | 6,762 | 5,416 | | 10,500 |
| **Dues & License** | | | | |
| G-Membership Dues Unallowable | | 960 | | |
| G-Membership Dues - Allowable | 320 | 3,610 | | |
| G-Professional Registration | 106 | 136 | | |
| **Total Dues & License** | 426 | 4,706 | | |
| **Insurance** | | | | |
| G-Business Insurance | 13,765 | 12,905 | | 16,800 |
| G-Key Owner Life Insurance (E) | 572 | 2,287 | | 1,925 |
| **Total Insurance** | 14,337 | 15,192 | | 18,725 |
| **Marketing & Business Development** | | | | |
| G-Recruiting Employees | | 5,200 | | |
| G-Advertising (c) | | 150 | | |
| G-Business Development Unallowable (g) | 166 | 3,019 | | |
| G-Allowable Business Development | 1,345 | 8,815 | | 13,650 |
| **Total Marketing & Business Development** | 1,511 | 17,184 | | 13,650 |
| **Office Expense** | | | | |
| G-Interest Expense (a) | 12,606 | 165,800 | | 21,000 |
| G-Finance Charge/Late Fees (a) | 1,986 | 13,496 | | 9,100 |
| G-Bank Charges (a) | 1,208 | 4,311 | | 3,500 |
| G-Loan Fees (a) | | 1,128 | | |
| G-Corporate Fees and Permits | 3,106 | 1,077 | | |
| G-Misc. Expense | 399 | 90 | | |
| G-Rent Expense | 20,531 | 53,542 | | 61,775 |
| G- Maintenance Expense | 235 | 5,847 | | 8,400 |
| G-Computer Maintenance | 918 | 15,473 | | 10,500 |
| G-Engineering Supply | | 13 | | |
| G-Surveying/Testing Supply | 16 | 1,377 | | 4,200 |
| G-Surveying Supply Surveyors West | | 85 | | |
| G- Allowable Office Supplies/Expense | 2,454 | 6,253 | | 10,500 |
| G-Non Allowable Office Expense | | 13 | | |
| G-Postage - Shipping | 8,913 | 1,884 | | 3,150 |
| G-Reproduction & Printing | 9,520 | 21,900 | | 19,600 |

EXHIBIT D-5



**Riedesel Engineering, Inc.**
Basis: Accrual
Print accounts with activity

Thursday, August 16, 2018
Page 3 of 3

**Profit and Loss Statement**

**Date Range from: 3/16/2018 to 7/31/2018**

| | YTD Balance | Prior YTD Balance | YTD Budget | Prior Year YTD Budget |
|---|---|---|---|---|
| G-Meal Expense Allowable | 661 | 930 | | 2,450 |
| G-Meals Non allowable (b) | 575 | 43 | | |
| Non Allowable Mileage | 155 | | | |
| Vendor Write-off | -687 | -20,703 | | |
| **Total Office Expense** | 62,596 | 272,560 | | 154,175 |
| **Professional Services** | | | | |
| G-Professional Accounting Services | 177 | 9,060 | | 10,500 |
| G-Contracted Labor Expense | | 1,164 | | |
| G-Professional Legal Services | 7,609 | 22,994 | | 7,000 |
| G-Professional Consulting Services | | 1,500 | | |
| **Total Professional Services** | 7,786 | 34,718 | | 17,500 |
| **Tax** | | | | |
| G-Misc. Tax | 573 | 109 | | 3,500 |
| **Total Tax** | 573 | 109 | | 3,500 |
| **Utilities** | | | | |
| G-Utility Expense | 3,342 | 4,935 | | |
| **Total Utilities** | 3,342 | 4,935 | | |
| **Vehicles & Travel** | | | | |
| G-Meetings/Training/Seminars Non allowable | | 400 | | |
| G-Training/Seminars/Conferences Allowable | 995 | 11,444 | | 6,335 |
| G-Travel & Subsistance Non allowable | -2,480 | 736 | | 9,520 |
| G-Travel & Subsistance Allowable | 19,512 | 20,125 | | 13,685 |
| G- Automobile Expense | 4,109 | 905 | | |
| **Total Vehicles & Travel** | 22,135 | 33,609 | | 29,540 |
| **Total Expenses** | **145,381** | **409,611** | | **265,440** |
| **Net Operating Income** | **-173,279** | **-460,364** | | **252,555** |
| **Other Income** | | | | |
| **Other Income and Expense** | | | | |
| Other Income | 865 | -1,692 | | |
| Finance Charges | | -6 | | |
| Gain/Loss Sale of Asset | 6,740 | | | |
| **Total Other Income and Expense** | 7,605 | -1,698 | | |
| **Total Other Income** | **7,605** | **-1,698** | | |
| **Net Income (Loss)** | **-165,674** | **-462,062** | | **252,555** |

EXHIBIT D-5

# EXHIBIT E

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor name | **Riedesel Engineering, Inc.** |
| United States Bankruptcy Court for the: | **DISTRICT OF IDAHO** |
| Case number (if known) | **18-00288-JMM**   Chapter **11** |

☑ Check if this is an amended filing

Official Form 206G

## Schedule G: Executory Contracts and Unexpired Leases

12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.

1. **Does the debtor have any executory contracts or unexpired leases?**

   ☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

   ☑ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

2. **List all contracts and unexpired leases**

   State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease

| | | |
|---|---|---|
| **2.1** | State what the contract or lease is for and the nature of the debtor's interest | **Equipment lease**<br>**Contract to be REJECTED** |
| | State the term remaining | |
| | List the contract number of any government contract | |

**De Lage Landen Financial Services, Inc.**
**PO Box 41602**

Philadelphia          PA          19101

| | | |
|---|---|---|
| **2.2** | State what the contract or lease is for and the nature of the debtor's interest | **Equipment lease**<br>**Contract to be REJECTED** |
| | State the term remaining | |
| | List the contract number of any government contract | |

**EverBank Commercial Finance, Inc.**
**PO Box 911608**

Denver          CO          80291

| | | |
|---|---|---|
| **2.3** | State what the contract or lease is for and the nature of the debtor's interest | **Maintenance Contract**<br>**Contract to be REJECTED** |
| | State the term remaining | |
| | List the contract number of any government contract | |

**H&H Business Systems**
**PO Box 846**

Veradale          WA          99037

| | | |
|---|---|---|
| **2.4** | State what the contract or lease is for and the nature of the debtor's interest | **Survey Equipment Lease**<br>**Contract to be REJECTED** |
| | State the term remaining | |
| | List the contract number of any government contract | |

**Selby's**
**PO Box 80625**

Billings          MT          59108

# EXHIBIT E

| Debtor | Riedesel Engineering, Inc. | Case number (if known) | 18-00288-JMM |
|---|---|---|---|

**Additional Page if Debtor Has More Executory Contracts or Unexpired Leases**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|

| 2.5 | State what the contract or lease is for and the nature of the debtor's interest | Office Lease<br>Contract to be REJECTED | Skypark Office Suites |
| | | | 2151 Beam Rd. |
| | State the term remaining | | |
| | List the contract number of any government contract | | Granger          WA          98932 |

| 2.6 | State what the contract or lease is for and the nature of the debtor's interest | Equipment Lease<br>Contract to be REJECTED | Wells Fargo Financial Leasing |
| | | | PO Box 10306 |
| | State the term remaining | | |
| | List the contract number of any government contract | | Des Moines          IA          50306-0306 |

| 2.7 | State what the contract or lease is for and the nature of the debtor's interest | Equipment Lease<br>Contract to be REJECTED | Xerox Financial Services |
| | | | PO Box 202882 |
| | State the term remaining | | |
| | List the contract number of any government contract | | Dallas          TX          75320 |

# EXHIBIT E

# Backlog as of 3-7-18

# CONTRACTS TO BE ASSUMED

| Project ID | Client | Project Description | Labor Contract Remaining (including WIP) | Original Labor Contract Amount |
|---|---|---|---|---|
| 2840-(2017) | Port of Othello | Othello Airport-FY18 | $ 51,842 | $ 83,760 |
| 2061 | Idaho County Airport | Idaho County Airport Runway | $ 39,198 | $ 507,939 |
| 2775-(2017) | City of Council | Council Municipal Airport Pavement Rehabilitaiton | $ 37,410 | $ 78,522 |
| 2688 | Idaho County Airport | Idaho County Taxiway Constrution | $ 35,521 | $ 209,378 |
| 2750-(2017) | City of Orofino | Orofino Airport Pavement Rehabilitation | $ 35,059 | $ 86,115 |
| 2289 | CSHQA | Twin Falls Airport Terminal Building - CSHOA | $ 8,619 | $ 129,822 |
| 2465 | Idaho County Airport | Idaho County Taxiway | $ 4,550 | $ 212,549 |
| 2764-(2017) | Greco Construction, Inc. | Greco-Plan Development | $ 90,395 | $ 124,400 |
| 2520 | Evergreen Highway District - Multiple Clients | Winchester Road, Evergreen HD Key No 13897 | $ 24,554 | $ 207,623 |
| 2789-(2017) | ITD District 4 | SH-25 Tiger Dr. to JCT US-93 | $ 22,101 | $ 60,565 |
| 2785-(2017) | Bannock County Highway Departments | KN 20028 Bannock Co. Event Center Ped Path | $ 19,713 | $ 55,951 |
| 2767-(2017) | Wendell Highway District | Wendell HD Guardrail & Signage KN 20289 | $ 970 | $ 24,000 |
| 2842-(2017) | Twin Falls Highway District | Twin Falls Highway District | $ 320 | $ 3,500 |
| 2742 | OFCO Investments, LLC | Pheasant Meadows Subd. Phase 2 B&C | $ 47,371 | $ 61,920 |
| 2623 | Dennis Hourany | Valencia Park Subdivision | $ 40,497 | $ 109,506 |
| 2811-(2017) | Keystone Construction & Development | Maple Ridge Subdivision, Phase 2 | $ 23,700 | $ 35,600 |
| 2743 | Chris Jones | Alexa Lane Subdivision | $ 11,630 | $ 21,930 |
| 2769-(2017) | Carolyn Anderson | Twin Falls Conveyance Plat Anderson | $ 5,075 | $ 5,075 |
| 2735 | David Gerdes | Homestead Subdivision No. 2 Drawing of Record and Final Plat | $ 2,785 | $ 7,250 |
| 2266 | Derrick Ellis | Golden Rail Trailer Court - Preliminary Wastewater Analysis | $ 1,515 | $ 18,450 |
| 2771-(2017) | Derrick Ellis | Jerome Storage Unit Site Plan & Constr Survv | $ 1,270 | $ 6,340 |
| 2689 | Camp Sawtooth | 2016 Camp Sawtooth Water System Upgrade | $ 152 | $ 1,960 |

EXHIBIT E

| | | | | | | |
|---|---|---|---|---|---|---|
| 2794-(2017) | Port of Othello | Port of Othello Water Storage Project | $ | 265,000 | $ | 287,500 | Currently on Hold, Possible in spring |
| 2732 | City of Hazelton | Hazelton Water Improvements Project | $ | 263,430 | $ | 392,015 |
| 2792-(2017) | City of Moscow | North Main to Polk Sewer | $ | 30,375 | $ | 53,500 |
| 2770-(2017) | City of Council | Council Transportation Plan Update | $ | 15,317 | $ | 30,000 |
| 2734 | City of Twin Falls | City of Twin Falls-Smiths Sewer | $ | 9,820 | $ | 34,400 |
| 2421 | City of Hazelton | City of Hazelton On Call Services Agreement | $ | 564 | $ | 33,400 |
| 2286 | Cable One | Property Survey Cable One | $ | 20,895 | $ | 33,940 |
| 2808-(2017) | Crea Construction | US 95 Curve Flattening MP 172 to MP 174 | $ | 18,767 | $ | 39,250 |
| 2746-(2017) | Crea Construction | Thain Road and Powers Ave Intersection | $ | 8,340 | $ | 42,900 |

| | | | | |
|---|---|---|---|---|
| Total Remaining | $ | 1,136,755 | $ | 2,999,060 | Original Contract |
| Total w/out Port of Othello | $ | 871,755 | | | Amounts |

# CONTRACTS TO BE ASSUMED

EXHIBIT E

| Fill in this information to identify the case and this filing: |
|---|
| Debtor Name    **Riedesel Engineering, Inc.** |
| United States Bankruptcy Court for the: **DISTRICT OF IDAHO** |
| Case number    **18-00288-JMM**<br>(if known) |

Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors

12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☐ *Schedule H: Codebtors* (Official Form 206H)
- ☐ *A Summary of Assets and Liabilities for Non-Individuals* (Official Form 206-Summary)
- ☐ Amended Schedule _____
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    8/17/2018
MM / DD / YYYY

X    /s/ Martin G. Gergen    *Martin G Gergen*
Signature of individual signing on behalf of debtor

**Martin G. Gergen**
Printed name

**President**
Position or relationship to debtor

# EXHIBIT E

# EXHIBIT F

**Exhibit B**
**Additional Compensation**

**Contract Assignment.** Five percent (5%) of the remaining contract value of unworked time (backlog) of any Contract, as set forth on Attachment B-1, , Employee causes to be assigned to Employer. However, Employer shall have the sole discretion to accept or reject any Contract assignment.  Work in progress and work already completed by the Employee's previous employer is not eligible for the 5% additional compensation described herein.

This amount shall be payable within 30 days of the date of assignment of the Contract to Employer.

The Contracts subject to assignment per the terms of this Employment Agreement are as follows:  *See Attachment B-1*


**Production Bonus.**  For a period of three years from the execution of this Employment Agreement, unless Employee is sooner terminated, the Employee may be eligible for a Production Bonus at calendar year end.

Employer's Chief Financial Officer, in his or her sole discretion and in accordance with his or her normal practices as set forth in Attachment B-2, will determine the Net Office Income, as defined here, received by the combined operations of the Twin Falls and Meridian offices.

If the combined Net Office Income (profit) of the Twin Falls office and Meridian office have a Profit at year end, then Employee shall be entitled to a Production Bonus as described in the following table; payable within 30 days of year end.

| Level | Profit | Production Bonus |
|-------|--------|------------------|
| 1 | Less than $90,000 | Zero |
| 2 | Between $90,000 and $110,000 | $30,000 |
| 3 | Between $110,000 and $130,000 | $42,000 |
| 4 | Between $130,000 and $150,000 | $57,000 |
| 5 | Between $150,000 and $180,000 | $76,000 |
| 6 | Between$180,000 and $210,000 | $100,000 |
| 7 | Greater than $210,000 | $100,000 plus 20% of Profit above $210,000 |

If at any time, during the three-year period, there has been a Loss then the amount of Loss shall directly offset any Production Bonus the Employee might otherwise be entitled to in the following year.

EXHIBIT F

CHURCH, HARRIS, JOHNSON & WILLIAMS, P.C.
Great Falls, Helena & White Sulphur Springs, Montana

The maximum cumulative Production Bonus that the Employer will pay the Employee over the three-year period under any circumstances shall be $400,000.

Employer shall determine Net Office Income (Profit), and Loss as follows:    *See example – Attachment B-2 for the format and types of revenue and expenditures typically included in Net Office Income.*

EXHIBIT F

# EXHIBIT G

# ASSET PURCHASE AGREEMENT

*THIS ASSET PURCHASE AGREEMENT* is made the _____ day of _____, 2018, by and between **MARTIN G. GERGEN** of _____, _____, Idaho _____ ("Seller") and **THOMAS, DEAN & HOSKINS, INC.**, a Montana Corporation, with principal offices at 1800 River Drive North, Great Falls, Montana 59401 ("**Buyer**").

## Section 1
### Property Description and Purchase Price

1.1.    **PROPERTY DESCRIPTION**.   In consideration of the mutual promises contained herein and the payment of TWELVE THOUSAND DOLLARS AND NO CENTS ($12,000.00) (the "Purchase Price"), Seller agrees to sell and Buyer agrees to buy the following property (the "Purchased Property"):

> Certain equipment, software, leasehold improvements, tools, office supplies, tools, furniture, and fixtures previously owned and used by Riedesel Engineering, more particularly described on Exhibit "A."

1.2.    **PURCHASE PRICE AND PAYMENT TERMS**.   Buyer shall pay the sum of TWELVE THOUSAND DOLLARS AND NO CENTS ($12,000.00) (the "Purchase Price") to Seller in immediately available funds at Closing.

## Section 2
### Closing and Conveyance of Title

2.1.    **CLOSING DATE**.   The date for closing this sale shall be the _____ day of _____, 2018, (the "Closing Date") or such other date as may be mutually agreeable to the parties.   The Closing shall take place at a place and time as may be mutually agreeable to the parties.   Except as otherwise expressly provided in this Asset Purchase Agreement, the Closing Date shall be the date Buyer is entitled to exclusive possession of the Property and the date used for proration of obligations such as taxes and assessments, premiums on insurance which may be assigned, interest, or any other rights to income or obligations for expenses relating to the Property.

2.2.    **TAXES AND ASSESSMENTS**.   The taxes, special improvement assessments for the current tax year, as well as prepaid rents, if any, shall be prorated at Closing as of the Closing Date.

2.3.    **CONVEYANCE OF PERSONAL PROPERTY**.   Title to the Personal Property shall be conveyed by Bill of Sale, Assignment, Certificate of Title, or other appropriate instrument at the time of Closing of this Asset Purchase Agreement.

## Section 3

### Representations and Warranties of Parties

3.1.    **REPRESENTATIONS, WARRANTIES AND COVENANTS OF Seller**. Seller represents, warrants, and covenants to and with Buyer that:

EXHIBIT G-1

CHURCH, HARRIS, JOHNSON & WILLIAMS, P.C.
Great Falls, Helena & White Sulphur Springs, Montana

3.1.1. This Asset Purchase Agreement constitutes the valid and binding obligation of Seller, enforceable against Seller in accordance with its terms;

3.1.2. The Seller's interest in the Purchased Property will be transferred to Buyer free and clear of all liens and encumbrances, security interests, claims or other defects of title of any kind, including any and all taxes, assessments and charges except as shall be allowed hereunder;

3.1.3. To the best of Seller's knowledge on the Closing Date, there are no actions, suits, proceedings or claim pending or, threatened with respect to or in any manner affecting the ownership, operation or use by Seller of the Purchased Property, or which might reasonably be expected to affect the Purchased Property, and Seller is not subject to any judgment, order, writ, injunction, or decree of any court or administrative authority which affects ownership, operation or use of the Purchased Property;

3.1.4. All of the representations, warranties, covenants, and agreements of Seller contained herein will be true and correct on and as of the Closing Date and shall survive the Closing Date; and

3.1.5. The execution and delivery of this Asset Purchase Agreement, and the performance of any of the transactions contemplated hereunder, will not violate any statute or governmental regulation, nor result in a breach of any of the terms, conditions or provisions of, or constitute a default under, or result in the acceleration of, any indenture, mortgage, security agreement, financing statement, contract, agreement or other instrument to which Seller is a party or by which Seller is bound.

3.2. **REPRESENTATION, WARRANTIES, AND COVENANTS OF BUYER**. Buyer makes the following representations and warranties, which representations and warranties shall survive the closing:

3.2.1. This Asset Purchase Agreement is valid and binding upon Buyer and is enforceable against Buyer in accordance with its terms;

3.2.2. Buyer has funds available to pay the down payment;

3.2.3. There are no pending or, to the best knowledge of Buyer, threatened actions or proceedings before any court or administrative agency or other authority which might materially or adversely affect Buyer's ability or right to perform all of Buyer's obligations hereunder;

3.2.4. All of the representations, warranties, covenants, and agreements of Buyer contained herein will be true and correct on and as of the Closing Date and shall survive the Closing Date; and

3.2.5. To the best of Buyer's knowledge, the execution and performance of this Asset Purchase Agreement will not violate any provision of any law, rule, regulation, order, judgment or decree applicable to Buyer.

EXHIBIT G-1    **CHURCH, HARRIS, JOHNSON & WILLIAMS, P.C.**
Great Falls, Helena & White Sulphur Springs, Montana

## Section 4
### Pre-closing Covenants

The parties agree as follows with respect to the period between the execution of this Asset Purchase Agreement and the Date of Closing:

4.1.   **GENERAL**.   Each of the parties hereto will use his or its best efforts to take all action and to do all things necessary, proper or advisable in order to consummate and make effective the transaction contemplated by this Asset Purchase Agreement, which actions shall include satisfaction, but not waiver, of those conditions to closing set forth below in that section entitled Conditions to Obligation to Close.

4.2.   **LIABILITIES**.   Buyer does not assume any of the liabilities, obligations or debts of the Seller, whether or not related to the Purchased Property.

4.3.   **NOTICE OF DEVELOPMENTS**.   Each party hereto will give prompt written notice to the other party of any material adverse development which may cause a breach of any of its own representations and warranties set forth herein.   In the event Buyer learn of any undisclosed liability of Seller, Buyer shall notify Seller of the undisclosed liability.   Seller shall then have SIXTY (60) days to satisfy the undisclosed liability.

## Section 5
### Post-closing Covenants

The parties agree as follows with respect to the period following the Closing Date:

5.1.   **FURTHER ASSURANCES.**   Each party shall, at any time after the execution of this Asset Purchase Agreement (or the closing of the transaction contemplated hereby) deliver to the other parties all such additional instruments of conveyance and assignments, certificates or other documents as such other party may reasonably request to effectuate this Asset Purchase Agreement, or to take any other actions necessary to carry out the purposes of this Asset Purchase Agreement.

5.2.   **RISK OF LOSS**.   Until the completion of Closing, Seller assumes the risk of all loss or damage to the Purchased Property by any cause.   Thereafter, Buyer assumes the risk of loss.

## Section 6
### Conditions to Obligation to Close

6.1.   **CONDITIONS PRECEDENT TO SELLER'S OBLIGATION**.   Seller's obligation to proceed with the sale of the Purchased Property is subject to the following conditions (any of which may be waived by Seller):

6.1.1. Buyer shall have performed and complied with all of its covenants hereunder in all material respects through the Closing Date;

6.1.2. No action, suit or proceeding shall be pending or threatened before any court or quasi-judicial or administrative agency of any federal, state, local or foreign jurisdiction or before any arbitrator wherein an unfavorable

**EXHIBIT G-1**            **CHURCH, HARRIS, JOHNSON & WILLIAMS, P.C.**
Great Falls, Helena & White Sulphur Springs, Montana

injunction, judgment, order, decree, ruling or charge would materially affect adversely the right of Buyer to acquire and own the Purchased Property; and

6.1.3.  Seller shall be satisfied that Buyer has performed and complied with all covenants and agreements to be performed by Buyer prior to or at the Closing Date.

6.2.  **CONDITIONS TO OBLIGATION OF BUYER**.   The obligation of Buyer to consummate the transactions to be performed by it in connection with the closing hereunder is subject to satisfaction of all of the following conditions:

6.2.1.  Seller shall have delivered the required instruments of conveyance for the Purchased Property;

6.2.2.  All representations and warranties of Seller shall be true and correct in all material respects at and as of the Closing Date;

6.2.3.  Seller shall have performed and complied with all of his covenants hereunder in all material respects through the Closing Date; and

6.2.4.  No action, suit or proceeding shall be pending or threatened before any court or quasi-judicial or administrative agency of any federal, state, local or foreign jurisdiction or before any arbitrator wherein an unfavorable injunction, judgment, order, decree, ruling or charge would materially affect adversely the right of Seller to sell or own the Purchased Property, or the Buyer to acquire and own the Purchased Property.

## Section 7
### Property Maintenance and Insurance

7.1.  **CONDITION OF PURCHASED PROPERTY**.   Buyer agrees and represents that it has conducted an independent investigation and inspection of the Purchased Property and has entered into this Asset Purchase Agreement in full reliance thereon, and that there are no other agreements, verbal or otherwise, modifying or affecting the terms hereof, and that Buyer is not relying upon any oral representations made by Seller or his agents.

7.2.  **INDEMNIFICATION OF SELLER**.   From and after the Closing Date, Buyer agrees to indemnify and hold Seller harmless from and against, and in respect to any losses, claims, liabilities, suits or damages incurred by Seller from:

7.2.1.  Any and all claims, liabilities, and obligations of every kind and description, contingent or otherwise, arising out of or related to the operation or use of the Purchased Property on or after the Closing Date;

7.2.2.  Any damage or deficiency resulting from any misrepresentation, breach of warranty or non-fulfillment of any agreement or covenant on the part of Buyer under this Asset Purchase Agreement;

7.2.3.  Any claims made by creditors of Buyer relating to the ownership or operation of the Purchased Property on or after the Closing Date; and,

00375032.DOCX.1 Page 4

EXHIBIT G-1

7.2.4. All reasonable costs and expenses, including reasonable attorneys' fees, incurred by Seller in connection with any action, suit, proceeding, demand, assessment or judgment incident to any of the matters Seller is indemnified by Buyer in this Asset Purchase Agreement.

7.3. **INDEMNIFICATION OF BUYER**.   From and after the Closing Date, Seller agrees to indemnify and hold Buyer, its shareholders, directors, officers, agents, and employees, harmless from and against, and in respect to any losses incurred by Buyer or its shareholders, directors, officers, agents, and employees from:

7.3.1. Any and all claims, liabilities, and obligations of every kind and description, contingent or otherwise, arising out of or related to the operation or use of the Purchased Property prior to the Closing Date;

7.3.2. Any damage or deficiency resulting from any misrepresentation, breach of warranty or non-fulfillment of any agreement or covenant on the part of Seller under this Asset Purchase Agreement;

7.3.3. Any claims made by creditors of Seller relating to the ownership or operation of the Purchased Property prior to the Closing Date; and,

7.3.4. All reasonable costs and expenses, including reasonable attorneys' fees, incurred by Buyer in connection with any action, suit, proceeding, demand, assessment or judgment incident to any of the matters Buyer is indemnified against by Seller in this Asset Purchase Agreement.

## Section 8
### DEFAULT

8.1. **BUYER'S REMEDIES**.   If Seller fails, refuses or neglects to perform this Asset Purchase Agreement, Buyer may:

8.1.1. Demand that Seller specifically perform Seller's obligations under this Asset Purchase Agreement; or

8.1.2. Demand monetary damages from Seller for Seller's failure to perform the terms of this Asset Purchase Agreement.

8.2. **SELLER'S REMEDIES**.   If Buyer fails, refuses or neglects to perform this Asset Purchase Agreement, Seller may:

8.2.1. Demand that Buyer specifically perform Buyer's duties and obligations under this Asset Purchase Agreement; or

8.2.2. Demand that Buyer pay monetary damages for Buyer's failure to perform the terms of this Asset Purchase Agreement.

## Section 9
### OWNERSHIP, ASSIGNMENT, AND MISCELLANEOUS PROVISIONS

9.1. **OWNERSHIP**.   Seller's interest in this Asset Purchase Agreement is owned in the same manner as currently reflected by Seller's document or documents of title to the Purchased Property.   Buyer's interest in this Asset Purchase Agreement is

EXHIBIT G-1

**CHURCH, HARRIS, JOHNSON & WILLIAMS, P.C.**
Great Falls, Helena & White Sulphur Springs, Montana

owned in the same manner as reflected by the instrument of conveyance to Buyer contemplated herein.

9.2. **STATUS CERTIFICATION**.   By entering into this Asset Purchase Agreement, each person executing this Asset Purchase Agreement represents that he or she is eighteen (18) years of age or older, of sound mind, and legally competent to own real and personal property in the State of Montana and, if signed in a representative capacity, authorized to bind his or her principal.

9.3. **ASSIGNMENT**.   No interest in this Asset Purchase Agreement or in its subject matter may be assigned, sold, leased or otherwise transferred (including for security purposes) without the prior written consent of Seller, which consent may be withheld in Seller's sole discretion.   Buyer acknowledges that Seller has entered into this Asset Purchase Agreement in reliance upon the unique qualifications of Buyer and that Seller is not required to consent to the assignment or transfer of any interest in this Asset Purchase Agreement to any other person or entity.   Any attempt to assign this Asset Purchase Agreement or any interest therein without prior written consent shall be void.   Consent to any assignment, sale, lease or other transfer shall not be construed as a waiver of the obligation to obtain consent to any subsequent assignment, sale, lease or other transfer.   Any assignment to which Seller consents shall not have the effect of releasing Buyer from its representations, obligations, or liabilities under this Asset Purchase Agreement, unless Seller specifically agrees to such a release in writing.

9.4. **NOTICE**.   Any notice or other communication required or permitted under this Asset Purchase Agreement shall be in writing and delivered by one of the following methods:   (i) personal delivery, (ii) deposited in the United States mail, certified or registered, return receipt requested, addressed as set forth below, or (iii) delivered to a private delivery service, such as Federal Express, addressed as set forth in the first paragraph of this Agreement.   Notice shall be deemed to be given upon the date of delivery in person or by private delivery service, or, if mailed, upon the earlier of receipt or three days from the date of postmark.   Any party may change its address by giving written notice of the change to the other parties in the manner provided in this section.

9.5. **ABSENCE OF BROKERS**.   Each party represents and warrants that it has not employed any finder, broker or agent in the negotiation of this transaction and that no person is entitled to any finder's fee, broker's commission or other similar form of remuneration by reason of or in connection with the execution or performance of this Asset Purchase Agreement.   The parties indemnify and hold each other harmless for any such claims and from any damages, losses, costs or reasonable attorney fees incurred by any other party relating to such claims.

9.6. **ATTORNEY FEES**.   In the event of a dispute arising hereunder, the prevailing party shall be entitled to reasonable attorney's fees, costs, disbursements, and all other expenses incurred by the prevailing party in connection with the resolution of the dispute or in connection with the enforcement of this Asset Purchase.

EXHIBIT G-1

9.7. **ENTIRE AGREEMENT**.  This Asset Purchase Agreement constitutes the entire agreement between the parties with respect to its subject matter and may only be modified, amended, or restated in writing signed by all the parties.

9.8. **FURTHER ASSURANCES**.  Each party shall, at any time after the execution of this Asset Purchase Agreement
(or the closing of the transaction contemplated hereby) deliver to the other party all such additional instruments of conveyance and assignments, certificates or other documents as such other party may reasonably request to effectuate this Asset Purchase Agreement, or to take any other actions necessary to carry out the purposes of this Asset Purchase Agreement.

9.9. **GOVERNING LAW**.  In the event a dispute arises under this Asset Purchase Agreement, the dispute shall be governed and determined by the laws of the State of Montana in effect at the time of this Asset Purchase.

9.10. **HEIRS, SUCCESSORS, & ASSIGNS**.  Each and all of the covenants, terms, provisions, and agreements contained in this Asset Purchase Agreement shall be binding upon and inure to the benefit of the parties hereto, and to the extent permitted by this Asset Purchase Agreement, their respective heirs, legal representatives, successors, and assigns.

9.11. **RIGHTS & REMEDIES CUMULATIVE**.  The rights and remedies provided in this Asset Purchase Agreement are cumulative and the use of any one right or remedy by any party shall not preclude or waive the right to use any or all other remedies.  The rights and remedies provided in this Asset Purchase Agreement are given in addition to any other rights the parties may have by law, statute, ordinance, related agreement or otherwise.

9.12. **SURVIVAL**.  The warranties and representations set forth herein shall survive the closing of the transaction contemplated by this Asset Purchase Agreement (and the delivery of the deed or other documents of conveyance) and shall not be merged with any instruments delivered at Closing.

9.13. **THIRD-PARTY BENEFICIARY**.  Nothing in this Asset Purchase Agreement shall create or give rise to any third-party beneficiary rights for any individual as a result of the terms and provisions of this Asset Purchase Agreement.

9.14. **TIME OF ESSENCE**.  Time is of the essence in performance and observance of all obligations and duties under this Asset Purchase Agreement.

9.15. **COUNTERPARTS**.  This Asset Purchase Agreement may be executed in counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.  A facsimile containing a signature of one or more of the parties hereto shall be deemed an original.

9.16. **NO WAIVER**.  Any indulgence, forbearance or waiver by a party of any obligation of another party under this Asset Purchase Agreement, or breach, shall not constitute or require a waiver of a subsequent breach of any sort, or extend any time for performance.

EXHIBIT G-1    **CHURCH, HARRIS, JOHNSON & WILLIAMS, P.C.**
Great Falls, Helena & White Sulphur Springs, Montana

*IN WITNESS WHEREOF*, the parties have executed this Asset Purchase Agreement consisting of _____ pages effective the date appearing on Page 1.

_____

**MARTIN G. GERGEN**

*Seller*

**THOMAS, DEAN & HOSKINS, INC.**

By    _____

Name:        Wade DeBoo

Title:        President

*Buyer*

EXHIBIT G-1

**CHURCH, HARRIS, JOHNSON & WILLIAMS, P.C.**
Great Falls, Helena & White Sulphur Springs, Montana

**Exhibit "A"**
Property Description

**CHURCH, HARRIS, JOHNSON & WILLIAMS, P.C.**
Great Falls, Helena & White Sulphur Springs, Montana

# EXHIBIT G-2

# Backlog as of 3-7-18

| Project ID | Client | Project Description | Labor Contract Remaining (including WIP) | Original Labor Contract Amount |
|---|---|---|---|---|
| 2840-(2017) | Port of Othello | Othello Airport-FY18 | $ 51,842 | $ 83,760 |
| 2061 | Idaho County Airport | Idaho County Airport Runway | $ 39,198 | $ 507,939 |
| 2775-(2017) | City of Council | Council Municipal Airport Pavement Rehabilitaiton | $ 37,410 | $ 78,522 |
| 2688 | Idaho County Airport | Idaho County Taxiway Constrution | $ 35,521 | $ 209,378 |
| 2750-(2017) | City of Orofino | Orofino Airport Pavement Rehabilitation | $ 35,059 | $ 86,115 |
| 2289 | CSHQA | Twin Falls Airport Terminal Building - CSHOA | $ 8,619 | $ 129,822 |
| 2465 | Idaho County Airport | Idaho County Taxiway | $ 4,550 | $ 212,549 |
| 2764-(2017) | Greco Construction, Inc. | Greco-Plan Development | $ 90,395 | $ 124,400 |
| 2520 | Evergreen Highway District - Multiple Clients | Winchester Road, Evergreen HD Key No 13897 | $ 24,554 | $ 207,623 |
| 2789-(2017) | ITD District 4 | SH-25 Tiger Dr. to JCT US-93 | $ 22,101 | $ 60,565 |
| 2785-(2017) | Bannock County Highway Departments | KN 20028 Bannock Co. Event Center Ped Path | $ 19,713 | $ 55,951 |
| 2767-(2017) | Wendell Highway District | Wendell HD Guardrail & Signage KN 20289 | $ 970 | $ 24,000 |
| 2842-(2017) | Twin Falls Highway District | Twin Falls Highway District | $ 320 | $ 3,500 |
| 2742 | OFCO Investments, LLC | Pheasant Meadows Subd. Phase 2 B&C | $ 47,371 | $ 61,920 |
| 2623 | Dennis Hourany | Valencia Park Subdivision | $ 40,497 | $ 109,506 |
| 2811-(2017) | Keystone Construction & Development | Maple Ridge Subdivision, Phase 2 | $ 23,700 | $ 35,600 |
| 2743 | Chris Jones | Alexa Lane Subdivision | $ 11,630 | $ 21,930 |
| 2769-(2017) | Carolyn Anderson | Twin Falls Conveyance Plat Anderson | $ 5,075 | $ 5,075 |
| 2735 | David Gerdes | Homestead Subdivision No. 2 Drawing of Record and Final Plat | $ 2,785 | $ 7,250 |
| 2266 | Derrick Ellis | Golden Rail Trailer Court - Preliminary Wastewater Analysis | $ 1,515 | $ 18,450 |
| 2771-(2017) | Derrick Ellis | Jerome Storage Unit Site Plan & Constr Survy | $ 1,270 | $ 6,340 |
| 2689 | Camp Sawtooth | 2016 Camp Sawtooth Water System Upgrade | $ 152 | $ 1,960 |

EXHIBIT G-2

| | | | | | | |
|---|---|---|---|---|---|---|
| 2794-(2017) | Port of Othello | Port of Othello Water Storage Project | $ | 265,000 | $ | 267,500 | Currently on hold, Main Possible in spring |
| 2732 | City of Hazelton | Hazelton Water Improvements Project | $ | 263,430 | $ | 392,015 | |
| 2792-(2017) | City of Moscow | North Main to Polk Sewer | $ | 30,375 | $ | 53,500 | |
| 2770-(2017) | City of Council | Council Transportation Plan Update | $ | 15,317 | $ | 30,000 | |
| 2734 | City of Twin Falls | City of Twin Falls-Smiths Sewer | $ | 9,820 | $ | 34,400 | |
| 2421 | City of Hazelton | City of Hazelton On Call Services Agreement | $ | 564 | $ | 33,400 | |
| 2286 | Cable One | Property Survey Cable One | $ | 20,895 | $ | 33,940 | |
| 2808-(2017) | Crea Construction | US 95 Curve Flattening MP 172 to MP 174 | $ | 18,767 | $ | 39,250 | |
| 2746-(2017) | Crea Construction | Thain Road and Powers Ave Intersection | $ | 8,340 | $ | 42,900 | |
| | | **Total Remaining** | $ | **1,136,755** | $ | **2,999,060** | **Original Contract** |
| | | **Total w/out Port of Othello** | $ | **871,755** | | | **Amounts** |

EXHIBIT G-2

Attachment B-2
**TD&H Engineering**
**Combined Twin Falls and Meridian Offices**
**Operations Worksheet - 2019 Sample**
DRAFT

| Employee Name Last, First | Employee Type | License | Dept. | Full-time Status | Pay Mode | Hourly Rate | Monthly Salary | Annual Wages | TOTAL Hours | Util. Rate | Billing Rate | Labor Multiplier | Labor Revenue | Direct Salaries | Indirect Salaries |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gergen, Martin | | PE | ENGR | FT | Salaried | $ 47.00 | $ 8,147 | $ 97,764 | 2,080 | 50% | $160 | 3.40 | $ 166,400 | $ 48,882 | $ 48,882 |
| Harding, Rex | | PE | ENGR | FT | Salaried | $ 39.50 | $ 6,847 | $ 82,164 | 2,080 | 70% | $140 | 3.54 | $ 203,840 | $ 57,515 | $ 24,649 |
| Bailey, Chevy | | PE | ENGR | FT | Salaried | $ 33.75 | $ 5,850 | $ 70,200 | 2,080 | 70% | $120 | 3.56 | $ 174,720 | $ 49,140 | $ 21,060 |
| Rostberg, Gabe | | EIT | ENGR | FT | Salaried | $ 30.00 | $ 5,200 | $ 62,400 | 2,080 | 70% | $105 | 3.50 | $ 152,880 | $ 43,680 | $ 18,720 |
| Bishop, Brook | | | ENGR | FT | Salaried | $ 25.48 | $ 4,417 | $ 53,004 | 2,080 | 70% | $95 | 3.73 | $ 138,320 | $ 37,103 | $ 15,901 |
| Wang, Emma | | EIT | ENGR | FT | Hourly | $ 27.00 | $ 4,680 | $ 56,160 | 2,080 | 70% | $95 | 3.52 | $ 138,320 | $ 39,312 | $ 16,848 |
| Reed, Tracy | | | ADMIN | FT | Hourly | $ 18.50 | $ 3,207 | $ 38,480 | 2,080 | 10% | $50 | 2.70 | $ 10,400 | $ 3,848 | $ 34,632 |
| | | | | | | | | $ - | | | | | $ - | $ - | $ - |
| | | | | | | | | $ - | | | | | $ - | $ - | $ - |

| | | | | | | | | Totals | $ 460,172 | 14,560 | | | | $ 984,880 | $279,480 | $ 180,692 |
| | | | | | | | | Avg / Employee | $ 65,739 | 2,080 | 59% | $109 | 3.42 | | | |

**Revenue**

| | | **Expenses** | |
|---|---|---|---|
| Professional Service Revenue | $ 984,880 | Direct Salaries | $ 279,480 |
| Labor Multiplier Adjustment | (75,980) | Direct Expenses | $ 25,400 |
| Reimbursable Revenue | 57,150 | Consultant Expenses | $ 75,000 |
| Consultant Revenue | 82,500 | Indirect Salaries | $ 180,692 |
| | | Payroll Variance | $ (0) |
| | | Payroll Taxes | $ 43,050 |
| | | Depreciation | $ 5,000 |
| | | Dues & Subscriptions | $ 5,500 |
| | | Insurance - Business | $ 22,650 |
| | | Insurance - Employee Benefits | $ 37,500 |
| | | Legal & Accounting Services | $ 500 |
| | | Retirement Plan Expense | $ - |
| | | Supplies - Engineering & Technical | $ 23,500 |
| | | Supplies - I.T./Software | $ 8,550 |
| | | Supplies - Office | $ 4,950 |
| | | Janitorial, Repairs & Maintenance | $ 5,750 |
| | | Rents | $ 44,250 |
| | | Phone, Internet, Utilities | $ 12,950 |
| | | Meals & Entertainment | $ 2,000 |
| | | Travel | $ 6,500 |
| | | Education | $ 4,950 |
| | | Advertising | $ 3,500 |
| | | Interest, Taxes & Fines | $ 2,000 |
| | | Charitable Donations | $ - |
| | | Bad Debt | $ - |
| | | Litigation, Project Fixes | $ - |
| | | Corporate Burden | $ 73,650 |
| | | Net Work Exchange (includes admin) | |
| Total Office Revenue | ######### | Total Office Expenses | $ 867,322 |
| Revenue per Month | $ 87,379 | Expenses per Month | $ 72,277 |

Projected Util. Rate: 61%

| | |
|---|---|
| Income from Operations | $ 181,228 |
| | 17% |
| Net Office Income | $ 181,228 |
| Monthly Net Income | $ 45,307 |

**EXHIBIT G-3**

## EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT is made this _____ day of August, 2018, by and between **THOMAS, DEAN & HOSKINS, INC.**, a Montana Corporation, with principal offices at 1800 River Drive North, Great Falls, Montana 59401 ("Employer") and **MARTIN G. GERGEN** of _____, Idaho _____ ("Employee").

## RECITALS

**Whereas**, Employer is a consulting engineering firm and has offices in Montana, Washington, Idaho, North Dakota, and Pennsylvania with its principle offices in Great Falls, Montana.

**Whereas**, Employer desires to retain the services of Employee as the organization's Regional Manager for offices in Twin Falls, Idaho and Meridian, Idaho, and Employee desires to be employed by Employer in this capacity.

**NOW, THEREFORE,** in consideration of the premises and the mutual covenants herein contained, it is agreed as follows:

1.      **Recitals**.  The foregoing recitals are true and correct.

2.      **Employment.**  Employer hereby employs Employee as the Regional Manager for offices in Twin Falls, Idaho and Meridian, Idaho, and the Employee hereby accepts employment as an Employee of Employer upon the terms and conditions herein set forth.

3.      **Employment Term.**  Except as otherwise provided in this Employment Agreement, Employee's term of employment under this Employment Agreement (the "Employment Term") shall commence on the ___ of August, 2018, and shall continue for a period of 3 years, unless otherwise agreed in a writing signed by both Employer and Employee.

4.      **Compensation.**  During the Employment Term, Employer shall pay Employee an annual salary in the amount set forth in Exhibit "A" hereto payable in equal installments at such payment intervals as are the usual custom of Employer, but not less often than once per month.  In addition to the monthly salary provided for herein, Employee shall be eligible to receive a bonus and/or other incentive compensation in an amount to be determined by Employer, as set forth on Exhibit "B"; provided, however, that the failure of Employer to award any such bonus and/or other incentive compensation shall not give rise to any claim against Employer.  The amount, if any, and timing of such production bonus, shall be determined by Employer in its sole discretion.

5.      **Transition Period.**  For a period of forty-five (45) calendar days, Employer will perform an operational review of the Twin Falls and Meridian offices.  Employer will

CHURCH, HARRIS, JOHNSON & WILLIAMS, P.C.
Great Falls, Helena & White Sulphur Springs, Montana

EXHIBIT G-4

work with Employee to establish all operating systems, staffing, payroll, and marketing in Employer's systems.

6.    **Duties of the Regional Manager.**

a.    **Devotion of Time to Professional Management and Supervisory Services.**  The best efforts of Employee shall be devoted to serving professionally Employer and its organization as well as any other duties as may from time to time be assigned to Employee by Employer.  Subject to any exceptions consented to by Employer, Employee shall devote substantially all Employee's normal business time to such services.  Employee shall follow the practices, by-laws, procedures, rules and policies of Employer with regard to services rendered by Employer and the fees charged for those services.  A job description is attached hereto as Exhibit "C."

b.    **Exclusive Practice for Employer.**  Employee shall not, without Employer's prior written consent, render similar management, technical and supervisory services to or for any person or firm for compensation; or engage in any activity competitive with and adverse to Employer's business or Employee's practice, whether alone, as a partner, or as an officer, director, employee, or shareholder of any other business establishment or as a trustee, fiduciary, or other representative of any other activity.  Employee shall not take personal advantage of any business opportunities that arise during his employment that may benefit Employer.  All material facts regarding such potential opportunities must be promptly reported to Employer for its consideration.

c.    **Outside Income**.  All consideration for professional and related services performed by Employee shall be considered Employer's income payable to Employer.  Notwithstanding any other provision herein contained, the following income or fees for professional services performed by Employee shall not be considered to be income of Employer and may be retained as Employee's own funds:

i.    Actual salaries or director's fees (not directly or indirectly in lieu of fees or compensation for professional services) with companies or organizations wherein upon review the Employer has determined no material conflict of interest exists, no proprietary intellectual property developed, designed, improved, or revised while in the employment of the Employer is accessed, utilized or discussed, or no material burden falls upon the offices, equipment or staff of

-2-

**EXHIBIT G-4**

Employer and the time factor involved in these activities by Employee is negligible;

ii.    Income from active or reserve duty with the United States Armed Forces;

iii.    Income from rents, dividends, interest or royalties; and

iv.    Income from service as a juror.

**d. Professional Obligations**.  At Employer's expense, Employee maintain appropriate membership(s) and licenses in professional organization(s) and other related association(s) as required by Employer at the Employer's principle place of business.

**7.    Employer's Authority.**  Employee shall be governed by the direction and policies of Employer respecting the management and supervision of the organization.

**8.    Reimbursement of Expenses and Consent to Offset for Personal Advances**.  Employer shall, in accordance with the policies and limits from time to time established by Employer, pay on behalf of Employee membership dues in professional associations and organizations contributing significantly to Employee's knowledge and ability, together with professional liability insurance and reasonable continuing professional education costs.

Employee consents to offset by Employer against salary, bonus or other compensation due Employee for advances made or obligations incurred by Employer for personal expenses of Employee such as long distance telephone, facsimile transmission, transportation, supplies and other items.  Such items withheld from compensation shall be accounted for in reasonable detail by Employer.

**9.    Benefit Plans**.  During the Employment Term and as otherwise provided in this Employment Agreement, and Exhibit "A" attached hereto, Employee shall be entitled to participate in any and all employee welfare and health benefit plans (including, but not limited to life insurance, health and medical, dental, and disability plans) and other employee benefit plans, including, but not limited to, qualified pension plans, established by Employer from time to time for the benefit of its employees. Employee shall be required to comply with the conditions attendant to coverage by such plans and shall comply with and be entitled to benefits only in accordance with the terms and conditions of such plans as they may be amended from time to time.  Nothing herein contained shall be construed as requiring Employer to establish or continue any particular benefit plan in discharge of its obligations under this Employment Agreement.

**10.    Vacation and Sick Leave**.  Employee shall be entitled to paid time off for vacation and sick leave as Paid Time Off (PTO) in the amounts identified on the attached Exhibit "A", and any other such paid absent time as the Employer may

-3-

EXHIBIT G-4

establish from time to time.  PTO leave shall be governed in accordance with Employer policies set forth in the Employee Handbook.  Upon termination, the value of accrued and unused paid time off will be paid to Employee with his final paycheck.

11.   **Termination**.  Notwithstanding anything herein contained to the contrary, this Agreement shall terminate automatically upon any of the following events:

     **a.**   Employee's Death;

     **b.**   "Good cause" existing for termination of Employee's employment, as that term is defined in Montana Code Annotated § 39-2-903(5);

     **c.**   Employee's failure to perform any of the enumerated Professional Obligations set forth above; and

     **d.**   Employee's failure to oversee and / or manage the operations in Twin Falls and / or Meridian in a profitable manner as determined by Employer;

     **e.**   Employer's dissolution or bankruptcy.

12.   **Remedies.**  Notwithstanding any other remedy specified in this Employment Agreement or available in law or equity, in the event Employee fails to complete the entire Employment Term, Employee acknowledges and agrees that it shall be liable to Employer for all direct and consequential damages caused by Employee's breach including, but not limited to, the increased cost of obtaining other services equivalent to those promised by Employee, lost revenue caused by Employee's absence, and recoupment of payments by Employer to third parties for Employee's licensure.  Employee further acknowledges that this Employment Agreement provides for employment for a specific term and is exempt from the Montana Wrongful Discharge from Employment Act.

13.   **Confidentiality**.  Employee acknowledges that he will have access to certain proprietary and confidential information of Employer in his capacity as Regional Manager.   Employee agrees not to use or disclose any confidential information during the Employment Term or thereafter in perpetuity other than in connection with performing Employee's duties in accordance with this Employment Agreement. In the event of a breach or threatened breach by Employee of the provisions of this paragraph, Employee acknowledges that Employer will be irreparably harmed and that monetary damages will be an insufficient remedy to Employer.  Therefore, Employee consents to enforcement of this paragraph by means of temporary or permanent injunction and other appropriate equitable relief in any court of competent jurisdiction, in addition to any other remedies Employer may have available to it under the terms of this Employment Agreement or otherwise allowable by law.

CHURCH, HARRIS, JOHNSON & WILLIAMS, P.C.
Great Falls, Helena & White Sulphur Springs, Montana

EXHIBIT G-4

14. **Intellectual Property**. Employer has hired Employee to work full-time, so anything Employee produces at any time during the Employment Term is the property of Employer. Any writing, invention, design, system, process, development or discovery conceived, developed, perfected, created or made by Employee, alone or with others, during the Employment Term and applicable to Employer's business and the services provided to Employer by Employee, whether or not patentable, registerable, or copyrightable shall be the sole and exclusive property of Employer.

Employee shall disclose the same promptly and completely to Employer and shall, during the period of his/her employment hereunder and at any time and from time to time hereafter, (a) execute all documents requested by Employer for vesting in it the entire right, title, and interest in and to the same, (b) execute all documents requested by Employer for filing such applications for and procuring patents, trademarks, service marks or copyrights as Employer, in its sole discretion, may desire to prosecute, and (c) give Employer all assistance it may reasonably require, including the giving of testimony in any suit, action, investigation or other proceeding, in order to obtain, maintain, and protect Employer's right therein and thereto.

15. **Employer's Property**. All records, files, lists, including computer generated lists, drawings, documents, correspondence, computer memory devices, electronically stored information, recorders, pagers, and related equipment and similar items relating to Employer's business that Employee prepares or receives from Employer shall remain Employer's sole and exclusive property. Upon termination of his employment, Employee shall promptly return to Employer all Employers' property in his possession. Until such time as Employee complies with the request to return any and all of Employer's property in a reasonable time frame, Employee's final salary payment shall be withheld and subject to garnishment of $500 per day which shall accrue until such time as Employer acknowledges that all equipment and related property has been returned. Employee further represents that he shall not copy or cause to be copied, print out, or cause to be printed out any software, electronically stored information, documents, or other materials originating with or belonging to Employer. Employee additionally represents that, upon termination of his/her employment with Employer, he shall not retain in his possession any such software, documents or other related materials.

16. **Covenant Respecting Competition**. For a period of eighteen months after Employee's termination of Employee's employment hereunder for any reason, regardless of whether the termination was initiated by Employer or by Employee, Employee shall not, on Employee's own behalf or on behalf of any other person, firm, corporation, association or other entity, either directly or indirectly, solicit, sell, service, create, manage or implement any kind of service or product offered by Employer to any person, company, firm or corporation: (1) who is a client or customer of Employer at the time Employee's employment with Employer is terminated; (2) who was a client or customer of Employer at any time within the two year period immediately preceding Employee's termination; or (3) whom Employee called upon while in the employ of Employer as a prospective client or customer  during the two year period immediately

-5-

preceding the termination of Employee's employment (collectively "Customer of Employer"). Both Employer and Employee agree this provision shall be governed by the jurisdictional boundaries of Twin Falls and Meridian. Both Employer and Employee agree that this Agreement does not prohibit Employee from leaving Employer and working directly or indirectly for a competitor or from forming a business in the same industry, so long as Employee honors the terms and conditions of this Agreement. In the event Employee breaches the terms of this provision, Employee shall be liable to Employer for damages resulting.

17. **Notice**. Any notice or other communication required or permitted under this Employment Agreement shall be in writing and delivered by one of the following methods: (i) personal delivery, (ii) deposited in the United States mail, certified or registered, return receipt requested, addressed as set forth below, or (iii) delivered to a private delivery service, such as Federal Express, addressed as set forth below:

**TO EMPLOYER**

Thomas, Dean & Hoskins, Inc.
1800 River Drive North
Great Falls, Montana 59401

**TO EMPLOYEE**

Martin G. Gergen
_____
_____, Idaho _____

Notice shall be deemed to be given upon the date of delivery in person or by private delivery service, or, if mailed, upon the earlier of receipt or three days from the date of postmark. Any party may change its address by giving written notice of the change to the other parties in the manner provided in this section. Employee shall provide Employer with a local address as soon as feasible.

18. **Severability**. If any provision of this Employment Agreement or its application to any person or circumstance shall be invalid, illegal, or unenforceable to any extent, the remainder of this Employment Agreement and its application shall not be affected and shall be enforceable to the fullest extent permitted by law.

19. **Attorney Fees**. In the event of a dispute arising hereunder, the prevailing party shall be entitled to reasonable attorney's fees, costs, disbursements, and all other expenses incurred by the prevailing party in connection with the resolution of the dispute or in connection with the enforcement of this Employment Agreement.

20. **Entire Agreement**. This Employment Agreement constitutes the entire agreement between the parties with respect to its subject matter and may only be modified, amended, or restated in a writing signed by all parties.

CHURCH, HARRIS, JOHNSON & WILLIAMS, P.C.
Great Falls, Helena & White Sulphur Springs, Montana

EXHIBIT G-4

**21.    No Waiver**.  Any indulgence, forbearance or waiver by a party of any obligation of another party under this Employment Agreement, or breach, shall not constitute or require a waiver of a subsequent breach of any sort, or extend any time for performance.

**22.    Time of Essence**.  Time is of the essence in performance and observance of all obligations and duties under this Employment Agreement.

**23.    Survival**.  Except for the parties' respective rights and obligations to provide employment and be employed, all other rights and obligations in this Employment Agreement shall survive the termination of this Employment Agreement.

**24.    Assignment.**  Neither this Employment Agreement, nor any of Employee's rights, powers, duties or obligations hereunder, may be assigned by Employee.  This Agreement shall be binding upon and inure to the benefit of Employee and his/her heirs and legal representatives and Employer and its successors. <u>Successors of Employer shall include, without limitation, any company or companies acquiring, directly or indirectly, all or substantially all of the assets of Employer, whether by merger, consolidation, purchase, lease or otherwise, and such successor shall thereafter be deemed "Employer" for the purposes of this Employment Agreement</u>.

**25.    Governing Law**.  In the event a dispute arises under this Employment Agreement, the dispute shall be governed and determined by the laws of the State of Montana, without regard to its conflicts of laws provisions, in effect at the time of this Employment Agreement.

**26.    Jurisdiction and Venue**.  The parties agree that any legal or equitable action for claims, damages, debts or obligations arising out of, or to enforce the terms of this Agreement may be brought in the United States District Court for the District of Montana, Great Falls Division, or in the Montana Eighth Judicial District Court, Cascade County, Montana, and that either court shall have personal jurisdiction over the parties and the venue of the action shall be appropriate in each court.

**27.    Acknowledgment.**  The parties acknowledge that they have read and fully understand the contents of this Employment Agreement and the attached Exhibits and execute it after having an opportunity to consult with legal counsel.

        IN WITNESS WHEREOF, the parties have executed this Employment Agreement, consisting of 11 pages, effective the date appearing on Page 1.

        **Thomas, Dean & Hoskins, Inc.**

        By: _____
        Name:        Wade DeBoo
        Title:        President

-7-

EXHIBIT G-4

***Employer***

By: _____

Name:        Martin G. Gergen

***Employee***

EXHIBIT G-4

CHURCH, HARRIS, JOHNSON & WILLIAMS, P.C.
Great Falls, Helena & White Sulphur Springs, Montana

**Exhibit A**
**Salary, Paid Time-Off, and Benefits**

Gross Pay $ 98,000.00  per year

Gross Pay is subject to all federal state and local taxes.

**Paid Time-Off (PTO)**

Effective with this Employment Agreement, the Employee shall accrue PTO at a rate defined in our Personnel Policy Manual with a starting level equal to 10 years of service; with years of service incrementing each subsequent year of employment at TD&H Engineering  at the actual years of service plus 10 years.   Within the first two years of employment, Employee shall not utilize more than 10 consecutive vacation days within one month.

The Employee must provide at least two weeks' notice of their intent to take vacation unless there are emergency circumstances.

**Benefits**

All other benefits will be as defined in the TD&H Personnel Policies Manual .  A copy of the current TD&H Personnel Policies Manual is provided in conjunction with this Agreement but is subject to change at any time at the discretion of the Employer and should not be considered a long-term commitment to provide any particular benefits.

EXHIBIT G-4

-9-

**Exhibit B**
**Additional Compensation**

**Contract Assignment.** Five percent (5%) of the remaining contract value of unworked time (backlog) of any Contract, as set forth on Attachment B-1, , Employee causes to be assigned to Employer. However, Employer shall have the sole discretion to accept or reject any Contract assignment. Work in progress and work already completed by the Employee's previous employer is not eligible for the 5% additional compensation described herein.

This amount shall be payable within 30 days of the date of assignment of the Contract to Employer.

The Contracts subject to assignment per the terms of this Employment Agreement are as follows: *See Attachment B-1*

**Production Bonus.** For a period of three years from the execution of this Employment Agreement, unless Employee is sooner terminated, the Employee may be eligible for a Production Bonus at calendar year end.

Employer's Chief Financial Officer, in his or her sole discretion and in accordance with his or her normal practices as set forth in Attachment B-2, will determine the Net Office Income, as defined here, received by the combined operations of the Twin Falls and Meridian offices.

If the combined Net Office Income (profit) of the Twin Falls office and Meridian office have a Profit at year end, then Employee shall be entitled to a Production Bonus as described in the following table; payable within 30 days of year end.

| Level | Profit | Production Bonus |
|---|---|---|
| 1 | Less than $90,000 | Zero |
| 2 | Between $90,000 and $110,000 | $30,000 |
| 3 | Between $110,000 and $130,000 | $42,000 |
| 4 | Between $130,000 and $150,000 | $57,000 |
| 5 | Between $150,000 and $180,000 | $76,000 |
| 6 | Between$180,000 and $210,000 | $100,000 |
| 7 | Greater than $210,000 | $100,000 plus 20% of Profit above $210,000 |

If at any time, during the three-year period, there has been a Loss then the amount of Loss shall directly offset any Production Bonus the Employee might otherwise be entitled to in the following year.

EXHIBIT G-4

CHURCH, HARRIS, JOHNSON & WILLIAMS, P.C.
Great Falls, Helena & White Sulphur Springs, Montana

The maximum cumulative Production Bonus that the Employer will pay the Employee over the three-year period under any circumstances shall be $400,000.

Employer shall determine Net Office Income (Profit), and Loss as follows:    *See example – Attachment B-2 for the format and types of revenue and expenditures typically included in Net Office Income.*

-11-

EXHIBIT G-4

CHURCH, HARRIS, JOHNSON & WILLIAMS, P.C.
Great Falls, Helena & White Sulphur Springs, Montana

**Exhibit C**
**Job Description**

**BRANCH MANAGER / OFFICE MANAGER**

**Reports to:**    Chief Executive Officer (CEO)

**Responsibilities:**

Review the design and production work of the staff under supervision to ensure that it meets the highest professional standard and is in conformance with company standards. Strive continually to see that work is completed on time and within allocated budget. Maintain close liaison with clients to resolve project questions. Prepare for review by CEO. Forecast administrative, staffing, and facility needs for office. Coordinate with main office. Lead in the formulation of business, marketing and strategic planning.

Supervise and be responsible for the overall direction, coordination, and evaluation of branch performance. Coordinate with the CEO the performance of the branch offices in Twin Falls and Meridian Idaho. Coordinate and carry out the marketing and financial objectives and policies established by the CEO and Board of Directors. Coordinates assignment of manpower with main office in timely forecast of project needs. Carry out supervisory responsibilities in accordance with the firm's policies and applicable laws. Responsibilities include interviewing, hiring, firing, and training employees; planning, assigning and directing work; appraising performance, rewarding and disciplining employees; addressing complaints and resolving problems. Maintain professional licensure in the state of residence and the state of branch office and be responsible for supervising production and construction documents. Seal/sign construction documents.

Share in role reporting to CEO and as the designated company contact. Attend client meetings as required. Responsible for overall control of the status of all projects under his/her control. Responsible for the monitoring and management of work-in-process, billings, and monitoring of outstanding accounts receivable and initial collection efforts for projects.

- Communications with Local Staff
- Develops and Implements Unit Operations Plan
- Represents Day-to-Day Operations and Business Unit
- Responsible for Marketing and Business Development of Business Unit
- Hires and Fires Unit Staff (within Unit Operations Plan)
- Maintains Relationships with Business Unit Clients
- Makes Purchases (within Unit Operations Plan)
- Provides Corporate Resources to Unit Staff
- Encourages Staff Development
- Ensures Quality Assurance of Project Work
- Manages operations in a way that Net Office Income is positive with a goal of at least 15% of gross revenue.

EXHIBIT G-4

CHURCH, HARRIS, JOHNSON & WILLIAMS, P.C.
Great Falls, Helena & White Sulphur Springs, Montana

**Education:**

Bachelor's degree in Engineering, Registered Engineer

**Experience:**

10 years engineering experience, of which at least two years should have been in management capacity.

EXHIBIT G-4

CHURCH, HARRIS, JOHNSON & WILLIAMS, P.C.
Great Falls, Helena & White Sulphur Springs, Montana

# EXHIBIT H

Official Form 14
(12/03)

**Form 14. CLASSES I THROUGH IV BALLOT FOR ACCEPTING OR REJECTING PLAN OF REORGANIZATION**

Holly Roark (ISB #7143)
ROARK LAW OFFICES
950 Bannock St. Ste. 1100
Boise, ID 83702
Telephone: (208) 536-3638
Facsimile: (310) 553-2601
holly@roarklawboise.com

*Attorney for Debtor and Debtor in Possession*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF IDAHO

In Re:

    RIEDESEL ENGINEERING, INC.,

             Debtor.

Case No. 18-00288-JMM

Chapter 11

**CLASSES I THROUGH IV BALLOT FOR ACCEPTING OR REJECTING PLAN OF REORGANIZATION**

Riedesel Engineering, Inc. filed a plan of reorganization dated August 17, 2018, (the "Plan") for the Debtor in this case. The Court has conditionally approved as providing adequate information Debtor's Chapter 11 Plan intended to provide adequate information under 11 U.S.C. §1125(f), for small business case under Chapter 11 (the "combined Disclosure Statement and Plan"). The combined Disclosure Statement and Plan provides information to assist you in deciding how to vote your ballot. If you do not have a combined Disclosure Statement and Plan, you may obtain a copy from Roark Law Offices, 950 Bannock St. Ste. 1100, Boise, ID 83702; T (208) 536-3638; F (310) 553-2601: holly@roarklawboise.com. Court approval of the disclosure statement does not indicate approval of the Plan by the Court.

**You should review the combined Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in class I through IV under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**

EXHIBIT H

Official Form 14 continued
(12/03)

**If your ballot is not received by Roark Law Offices, 950 Bannock St. Ste. 1100, Boise, ID 83702; T (208) 536-3638; F (310) 553-2601: holly@roarklawboise.com on or before September 4, 2018, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court it will be binding on you whether or not you vote.**

**ACCEPTANCE OR REJECTION OF THE PLAN**

Please complete the relevant sections below:

*Secured claim holders*: The undersigned, the holder of a Class _____ claim against the Debtor in the unpaid amount of Dollars $_____, with a secured interest in_____
_____.

*Priority unsecured claim holders*: The undersigned, the holder of a Class _____ claim against the Debtor in the unpaid amount of Dollars $_____, entitled to priority status pursuant to 11 USC §_____.

*General unsecured claim holders*: The undersigned, the holder of a Class _____ claim against the Debtor in the unpaid amount of Dollars $_____.

Vote to accept or reject the proposed Plan of Reorganization of Debtors:
(Check one box only)

[   ] ACCEPTS THE PLAN          [   ] REJECTS THE PLAN

Dated: _____
Print or type name: _____
Signature: _____
Title (if corporation or partnership) _____
Address: _____
_____
_____

**RETURN THIS BALLOT TO THE BELOW ADDRESS SO IT IS RECEIVED ON OR BEFORE SEPTEMBER 4, 2018.**

Holly Roark, Attorney
ROARK LAW OFFICES
950 Bannock St. Ste. 1100
Boise, ID 83702
T (208) 536-3638
F (310) 553-2601
holly@roarklawboise.com

# EXHIBIT H

# EXHIBIT I

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF IDAHO – BOISE**

| | |
|---|---|
| In Re: | Case No. 18-00288-JMM |
| RIEDESEL ENGINEERING, INC., | |
| FDBA SURVEYORS WEST | Chapter 11 |
| | |
| Debtor and Debtor in Possession. | |

**ORDER GRANTING EX PARTE APPLICATION AND CONDITIONALLY APPROVING AS PROVIDING ADEQUATE INFORMATION DEBTOR'S CHAPTER 11 PLAN INTENDED TO PROVIDE ADEQUATE INFORMATION UNDER 11 U.S.C. § 1125(f)(1), FOR SMALL BUSINESS CASE UNDER CHAPTER 11, FIXING TIME FOR FILING ACCEPTANCES OR REJECTIONS OF THE PLAN, AND FIXING THE TIME FOR FILING OBJECTIONS TO THE DISCLOSURE STATEMENT AND TO THE CONFIRMATION OF THE PLAN, COMBINED WITH NOTICE THEREOF AND OF THE HEARING ON FINAL APPROVAL OF THE DEBTOR'S CHAPTER 11 PLAN AS PROVIDING ADEQUATE INFORMATION AND THE HEARING ON CONFIRMATION OF THE PLAN**

An Ex Parte Application to Determine that Plan Provides Adequate Information under §1125(F)(1) and to Conditionally Approve Disclosure Statement and Fix Deadlines along with a Chapter 11 Plan Intended to Provide Adequate Information under 11 U.S.C. §1125(f)(1) for Small Business Case under Chapter 11 of the Bankruptcy Code having been filed by Riedesel Engineering, Inc. as Doc. No. ___, on August 17, 2018, and the Debtor being a small business debtor; the Court being duly advised in the premises;

IT IS ORDERED, and notice is hereby given, that:

A.      The Chapter 11 Plan Intended to Provide Adequate Information under 11 U.S.C. §1125(f)(1) for Small Business Case under Chapter 11, Doc. ____, filed August 17,

# EXHIBIT I

2018, filed by Debtor-in-Possession, Riedesel Engineering, Inc., is conditionally approved
as providing adequate information within the meaning of 11 U.S.C. §1125(f)(1);

B.          Within __ day(s) after the entry of this order, the Chapter 11 Plan Intended to
Provide Adequate Information under 11 U.S.C. §1125(f)(1) for Small Business Case under
Chapter 11, filed Doc. ___, filed August 17, 2018, and a ballot conforming to Official
Form 14 shall be mailed to creditors, equity security holders, and other parties in interest,
as provided in Federal Rules of Bankruptcy Procedure 3017(d), and shall be transmitted to
the United States Trustee.

C.          **September 18, 2018**, at **9:30 a.m.** is fixed for the hearing on final approval of
the disclosure statement (if a written objection has been timely filed) and for the hearing on
confirmation of the plan, at the United States Courthouse & Federal Building, 550 West
Fort Street, Boise, Idaho.

D.          **September 4, 2018**, is fixed as the last day for filing written acceptances or
rejections of the plan referred to above (i.e. submitting ballots);

E.          **September 4, 2018**, is fixed as the last day for filing and serving written
objections to the disclosure statement and confirmation of the plan pursuant to Federal
Rule of Bankruptcy Procedure 3020(b)(1).

F.          Any objections must be filed with the United States Bankruptcy Court at
550 W. Fort St. Boise, Idaho 83724, and served upon debtor's counsel, Holly Roark
of the firm Roark Law Offices, 950 Bannock St. Ste. 1100, Boise, ID 83702, and
upon the United States Trustee, 720 Park Boulevard, Suite 220, Boise, Idaho 83712.

# EXHIBIT I

// End of text //

Submitted by:
Roark Law Offices
Holly Roark
Counsel for Debtor and Debtor in Possession

Approved as to form only:

s/_____

David Newman, Attorney for U.S. Trustee
Date:

# EXHIBIT I